BOSSELMAN, INC., A NEBRASKA CORPORATION, ET AL.,
APPELLANTS, V. STATE OF NEBRASKA AND NEBRASKA LIQUOR
CONTROL COMMISSION, APPELLEES, CITY OF LINCOLN, NEBRASKA,
A MUNICIPAL CORPORATION, INTERVENOR-APPELLEE.

432 N.W.2d 226

Filed December 2, 1988.   No. 87-103.

Donald L. Dunn, of Rembolt Ludtke Parker & Berger, for appellants.

Robert M. Spire, Attorney General, and Susan M. Ugai for appellees.

Dana W. Roper, Chief Assistant Lincoln City Attorney, for intervenor-appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

The second session of the 89th Legislature enacted 1986 Neb. Laws, L.B. 911, codified in Neb. Rev. Stat. §§ 53-101.03, 53-103, 53-117.03, 53-117.04, 53-131, 53-132, 53-133, 53-134, 53-134.01, and 53-1,116 (Cum. Supp. 1986), which undertakes a number of substantive and procedural changes in the regulation and control of the retail sale of alcoholic liquors

under the Nebraska Liquor Control Act, Neb. Rev. Stat. §§ 53-101 et seq. (Reissue 1984 & Supp. 1985). Principal among the substantive changes and central to the purpose of the subject enactment is the grant to local governing bodies of the option to make recommendations concerning approval or denial of alcoholic beverage licenses, which recommendations are binding upon the defendant-appellee Nebraska Liquor Control Commission. L.B. 911, §§ 1, 3, and 4; §§ 53-101.03 and 53-131 (Cum. Supp. 1986). Prior law gave local governing bodies the option of making nonbinding recommendations to the commission. § 53-131 (Reissue 1984). Plaintiffs-appellants, Bosselman, Inc., Rite-Way Oil & Gas Company, Inc., Gas 'N Shop, Inc., Kwik Shop, Inc., Contemporary Industries Nebraska, Inc., and Wymodak, Inc., all holders of at least one liquor license subject to yearly renewal, seek a declaration that, among other things, empowering the local governing bodies to make binding recommendations constitutes a delegation of the State's legislative power in violation of Neb. Const. art. II, § 1, which, among other things, distributes the governmental powers of this state to three separate departments: legislative, executive, and judicial. Defendants-appellees, State of Nebraska and its aforesaid commission, and intervenor-appellee, City of Lincoln, hereinafter collectively referred to as the "regulators," deny the license holders' claim and further assert that this suit does not fall within the purview of the declaratory judgment statutes, Neb. Rev. Stat. §§ 25-21,149 et seq. (Reissue 1985). The district court entertained but dismissed the suit, finding L.B. 911 constitutional. We agree the suit was properly brought, but conclude the enactment unconstitutionally delegates the State's legislative power to local governing bodies. Accordingly, we reverse the judgment of the district court.

We begin by questioning whether the city has the "direct and immediate" legal interest required to properly intervene in this litigation. *Basin Elec. Power Co-op v. Little Blue N.R.D.*, 219 Neb. 372, 363 N.W.2d 500 (1985). However, we also note that its presence in no way alters the nature of the matters before us. That being so, and since none of the parties complain about the city's presence, we do not concern ourselves further with the

propriety of its intervention, and proceed to an analysis of the regulators' claim that declaratory judgment may not be used to challenge the constitutional validity of L.B. 911.

Contrary to the regulators' claim that the constitutionality of the enactment cannot be tested by a suit for declaratory judgment, such an action has long been recognized as an appropriate remedy for determining the validity, construction, or interpretation of a statute. *Midwest Messenger Assn. v. Spire*, 223 Neb. 748, 393 N.W.2d 438 (1986); *Mullendore v. School Dist. No. 1*, 223 Neb. 28, 388 N.W.2d 93 (1986); *Lincoln Dairy Co. v. Finigan*, 170 Neb. 777, 104 N.W.2d 227 (1960). Whether to entertain such an action is within the discretion of the trial court. *Omaha Nat. Bank v. Spire*, 223 Neb. 209, 389 N.W.2d 269 (1986); *Mullendore v. School Dist. No. 1, supra*; *Sim v. Comiskey*, 216 Neb. 83, 341 N.W.2d 611 (1983).

The regulators in effect claim that entertaining the suit constituted an abuse of discretion by the trial court because the license holders possess no legally protectable interest or right, and thus lack any standing to challenge the enactment. In making that claim, the regulators point to *Beisner v. Cochran*, 138 Neb. 445, 293 N.W. 289 (1940), and *Alcoholic Resocialization Conditioning Help, Inc. v. State*, 206 Neb. 788, 295 N.W.2d 281 (1980), which make the general statement that a citizen has no vested right in statutory licenses, permits, or privileges. The regulators further point to the language of § 53-149 (Reissue 1984), which provides that a liquor license is "purely a personal privilege, good for not to exceed one year after issuance unless sooner revoked as in this act provided, and *shall not constitute property . . .*" (emphasis supplied), and to § 53-150 (Reissue 1984), which provides that the "renewal privilege herein provided for shall not be construed as a vested right . . . ." In *Bali Hai', Inc. v. Nebraska Liquor Control Commission*, 195 Neb. 1, 8, 236 N.W.2d 614, 618 (1975), we stated that under § 53-149, the " 'right to engage in the sale of intoxicating liquors involves a mere privilege; and restrictive regulations or even a suppression of the traffic do not deprive persons of property without due process of law . . . .' " Recently, this language was repeated in *Gas 'N Shop v. Nebraska Liquor Control Comm.*, 229 Neb. 530, 427 N.W.2d

784 (1988), where due process guarantees were not at issue. The cited language appears to originate in *Marsh & Marsh v. Carmichael*, 136 Neb. 797, 801-02, 287 N.W. 616, 619 (1939), in which we also said,

"There is no vested right in a license to sell intoxicating liquors, which the state may not take away at pleasure. . . . Such licenses are not contracts between the state or municipality issuing them and the licensee, but are mere temporary permits to do what otherwise would be unlawful. . . ."

We must recognize, however, that characterizing an interest as a privilege as distinguished from a right is no longer useful for the purpose of determining whether procedural due process protections apply to the interest. In *Board of Regents v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972), the U.S. Supreme Court, in the course of holding that a nontenured professor had no constitutionally protected interest in reemployment for the next year, nonetheless observed that it had "fully and finally rejected the wooden distinction between 'rights' and 'privileges' that once seemed to govern the applicability of procedural due process rights." 408 U.S. at 571. The *Roth* Court further noted that in order to determine whether due process requirements apply, a court must look not to the "weight" but to the nature of the interest at stake and must look to see if the interest is within U.S. Const. amend. XIV's protection of liberty and property, saying:

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. . . .

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

408 U.S. at 577.

In accordance with the teaching of *Roth*, this court, in *Braesch v. DePasquale*, 200 Neb. 726, 265 N.W.2d 842 (1978), observed that due process is a flexible concept calling for such procedural protections as are appropriate in a particular situation and that the protection the 14th amendment affords to property extends to benefits to which one has a claim or entitlement under state law or practice.

Although the societal interests in operating a motor vehicle are different than the societal interests in the sale and purchase of alcoholic beverages, it is nonetheless worthy of note that in *Bell v. Burson*, 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971), the U.S. Supreme Court held that procedural due process protections were applicable to state action suspending or revoking vehicle operators' licenses, because once licenses are issued, their continued possession may become essential in the pursuit of a livelihood.

Recent cases which recognize that the right-privilege dichotomy is no longer useful in the type of due process analyses involved in these circumstances hold that a licensee has a constitutionally protected interest in obtaining the renewal of a liquor license. As stated by the Michigan Supreme Court in *Bundo v Walled Lake*, 395 Mich. 679, 693, 238 N.W.2d 154, 160 (1976), once a liquor license issues, the holder no longer has probationary status but could "reasonably assume . . . that there was a great likelihood that his license would be renewed." Similarly, the Supreme Court of Alaska, in *Frontier Saloon, Inc. v. Alcoholic Beverage Con. Bd.*, 524 P.2d 657 (Alaska 1974), held that a liquor license already granted is a species of property entitled to due process protection, not merely a privilege subject to withdrawal or denial at the whim of the state, because suspension thereof would represent a potential economic loss to the licensee's business.

Accordingly, the district court did not abuse its discretion by entertaining this suit.

We thus reach the question of whether, as the license holders assert, L.B. 911 unconstitutionally delegates the State's legislative power to local governing bodies. In *Lincoln Dairy Co. v. Finigan*, 170 Neb. 777, 104 N.W.2d 227 (1960), certain

milk processors challenged as an unconstitutional delegation a statute which empowered the director of the Department of Agriculture and Inspection to adopt by regulation minimum standards for grade A milk products in general compliance with the Milk Ordinance and Code of the U.S. Public Health Service, violation of which would constitute a misdemeanor. In declaring that the statute unconstitutionally delegated to an administrative officer the Legislature's power to define crimes, this court said:

> It is fundamental that the Legislature may not delegate legislative power to an administrative or executive authority. Smithberger v. Banning, 129 Neb. 651, 262 N.W. 492, 100 A.L.R. 686. The Legislature does have power to authorize an administrative or executive department to make rules and regulations to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law within designated limitations. Such authority is administrative in its nature and its use by administrative officers is essential to the complete exercise of the powers of all departments. State ex rel. Martin v. Howard, 96 Neb. 278, 147 N.W. 689. . . .
>
> The limitations of the power granted and the standards by which the granted powers are to be administered must, however, be clearly and definitely stated in the authorizing act.

170 Neb. at 780-81, 104 N.W.2d at 230-31. Such standards may not rest on indefinite, obscure, or vague generalities, or upon extrinsic evidence not readily available. *Id.*

The suggestion made by one of the regulators that the doctrine announced in *Lincoln Dairy* does not apply to delegations to local governing bodies has already been considered and rejected by this court. In *Lennox v. Housing Authority of City of Omaha*, 137 Neb. 582, 290 N.W. 451 (1940), this court noted that the Legislature could not delegate its powers to make law to the housing authority and council of the city of Omaha without imposing adequate standards to guide the discretion of those local bodies.

In applying the tenets stated in *Lincoln Dairy*, this court has held:  " 'Where the Legislature has provided reasonable

limitations and standards for carrying out the delegated duties, there is no unconstitutional delegation of legislative authority.' " *Ewing v. Scotts Bluff Cty. Bd. of Equal.*, 227 Neb. 798, 805, 420 N.W.2d 685, 690 (1988); *In re Application U-2*, 226 Neb. 594, 413 N.W.2d 290 (1987). In *State ex rel. Douglas v. Nebraska Mortgage Finance Fund*, 204 Neb. 445, 464, 283 N.W.2d 12, 24 (1979), we declared: "The exercise of a legislatively delegated authority to make rules and regulations to carry out an expressed legislative purpose, or for the complete operation or enforcement of a law with clearly designated limitations and standards, is not an exercise of legislative power." We went on to observe:

> The question of how far the Legislature should go in filling in the details of the standards which an administrative agency is to apply raises large issues of policy in which the Legislature has a wide discretion, and the court should be reluctant to interfere with such discretion. Such standards in conferring discretionary power upon an administrative agency must be reasonably adequate, sufficient, and definite for the guidance of the agency in the exercise of the power conferred upon it and must also be sufficient to enable those affected to know their rights and obligations. 1 Am. Jur. 2d, Administrative Law, § 117, p. 923. The modern tendency is to be more liberal in permitting grants of discretion to an administrative agency in order to facilitate the administration of laws as the complexity of economic and governmental conditions increases. 1 Am. Jur. 2d, Administrative Law, § 118, p. 925. This is particularly true where . . . the violation of any such regulation does not constitute a criminal act.

204 Neb. at 465, 283 N.W.2d at 24.

The question therefore becomes whether the enactment provides the local governing bodies with adequate, sufficient, and definite standards within which they are to exercise their discretion.

L.B. 911, § 6, amended § 53-134(7) to provide that in performing their licensing functions, "the considerations of the local governing body shall include, but not be limited to," the

following criteria:

> the adequacy of existing law enforcement and the recommendation of law enforcement agencies in the area . . . existing motor vehicle and pedestrian traffic flow in the vicinity of the proposed licensed premises . . . zoning restrictions . . . the sanitation or sanitary conditions on or about the proposed licensed premises . . . the existence of a citizens' protest and any other evidence in support of or opposition to the application . . . the existing population of the city, village, or county, as the case may be, its projected growth, the existence of licenses in such city, village, or county, and the class of such licenses . . . the nature of the neighborhood or community where the proposed licensed premises are located . . . whether the type of business or activity proposed to be operated in conjunction with the proposed license is and will be consistent with the public interest, and . . . any licensing standards enacted by such local governing body pursuant to section 53-134.01.

§ 53-134 (Cum. Supp. 1986). Section 53-134.01 (Cum. Supp. 1986) empowers a local governing body to adopt by ordinance more restrictive licensing standards than those of the commission, based on that "particular community's needs or standards," provided those more restrictive standards do not conflict with the act.

The requirement that licensing standards adopted by a local governing body be based on its "needs or standards" does not provide sufficient guidance to meet the requirements of a constitutional delegation of legislative power. Further, the provision of § 53-134(7), that the local governing bodies are not limited to a consideration of the designated criteria, which include those standards duly adopted by local ordinance, in effect purports to empower local governing bodies to consider criteria beyond those they adopt pursuant to the provisions of § 53-134.01, for which the enactment sets no standards at all.

Thus, the conclusion that L.B. 911 delegates this State's legislative power to the local governing bodies in violation of Neb. Const. art. II, § 1, is inescapable.

It is equally apparent that without the delegation to the local

governing bodies contemplated by L.B. 911, no part of the enactment is workable. Accordingly, no part of the enactment is severable from the portion thereof which contains the unconstitutional delegation, and as a consequence, the entire enactment is unenforceable. *Snyder v. IBP, inc.*, 229 Neb. 224, 426 N.W.2d 261 (1988); *State v. Monastero*, 228 Neb. 818, 424 N.W.2d 837 (1988). It is therefore unnecessary to consider the license holders' other claims of constitutional infirmity.

REVERSED.