KWIK SHOP, INC., DOING BUSINESS AS KWIK SHOP, APPELLANT, V. CITY OF LINCOLN ET AL., APPELLEES.
498 N.W.2d 102

Filed April 9, 1993.    Nos. S-91-012 through S-91-021.

Donald L. Dunn, Carl J. Sjulin, and Penny J. Berger, of Rembolt Ludtke Parker & Berger, for appellant.

William F. Austin, Lincoln City Attorney, and Joel D. Pedersen for appellee City of Lincoln.

Richard L. Boucher for appellee Mothers Against Drunk Driving.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

LANPHIER, J.

Acting in accordance with the recommendation of the appellees, the City of Lincoln, Mothers Against Drunk Driving, the Lincoln Package Beverage Association, the Culler Neighborhood Association, and Joe Quattrocchi, and pursuant to the Nebraska Liquor Control Act, Neb. Rev. Stat. §§ 53-101 to 53-1,121 (Reissue 1988 & Cum. Supp. 1990), the Lincoln City Council (Council) denied 10 applications for class B liquor licenses filed by the appellant, Kwik Shop, Inc. (Kwik Shop). These licenses would allow Kwik Shop to sell beer at retail outlets within the City of Lincoln's corporate limits for consumption away from the existing convenience store premises sought to be licensed. Upon appeal by Kwik Shop, the Lancaster County District Court affirmed the actions of the Council based upon § 53-134 (Cum. Supp. 1990). Kwik Shop challenged the constitutionality of that version of § 53-134, contending that the statutory standards were arbitrary and analogous to the prior version of § 53-134 which was declared unconstitutional by this court. After the district court's affirmance, Kwik Shop timely appealed to this court. It asks that we reverse the judgment of the district court, declare the statute unconstitutional, and order the Council to issue the licenses. We reverse, and remand with directions.

## BACKGROUND

On December 12, 1989, Kwik Shop filed with the Nebraska Liquor Control Commission (Commission) two applications for class B liquor licenses for two of its convenience stores. A class B license permits the retailer to sell beer only, in the

original package, for consumption off the premises. § 53-124(5)(B) (Cum. Supp. 1990). On December 14, the Commission gave notice to the City of Lincoln of the filing of the applications, and on January 15, 1990, a hearing was held before the Council regarding these first two applications.

On February 23, 1990, Kwik Shop filed with the Commission an additional eight applications for class B liquor licenses for eight different retail establishments. On February 28, the Commission gave notice to the City of Lincoln of these applications, and on March 19, a hearing was held regarding the eight applications.

Each of the hearings was conducted pursuant to the procedures set forth in § 53-134 (as amended by 1989 Neb. Laws, L.B. 781). At the outset of each hearing, Kwik Shop filed a written objection to proceeding in conformance with the procedures established by L.B. 781. After Kwik Shop offered evidence addressing each of the 20 criteria to be considered by the licensing body as set forth in § 53-134, evidence relating to the applications was presented by the City of Lincoln. Three persons also appeared in opposition to the applications, representing the appellees Mothers Against Drunk Driving, the Lincoln Package Beverage Association, the Culler Neighborhood Association, and Joe Quattrocchi, the owner of an established liquor store.

At the conclusion of each hearing, a motion to deny was made with respect to each application. The motions passed, and resolutions denying each application were adopted.

On appeal, the district court affirmed the Council's denial of all 10 of Kwik Shop's applications, finding that pursuant to L.B. 781, there was some competent evidence supporting the Council's decision. The district court also found that the Council, in denying these applications, was acting within its jurisdiction and authority. This appeal followed.

## ASSIGNMENTS OF ERROR

Kwik Shop assigns a number of errors, contending in summary that the district court erred in failing to find that (1) Kwik Shop had standing to challenge L.B. 781's constitutionality, (2) L.B. 781 is unconstitutional on its face and

as applied, (3) the Council failed to act in an unbiased fashion, (4) the Council failed to note the issues to be considered at the hearings and failed to make findings of fact upon each contested issue as required by § 53-134(3), (5) the Council failed to provide notice to appellant in conformance with § 53-134(3), (6) the Council acted in excess of its statutory authority, (7) the Council failed to approve appellant's applications based upon the unconstitutional procedures set forth in L.B. 781, and (8) the Council based its decisions on grounds that are unsupported in view of the record.

## THE CONSTITUTIONALITY OF L.B. 781

As a threshold question to the determination of this case, we must first address the question of whether, as Kwik Shop asserts, L.B. 781 unconstitutionally delegates legislative power to local governing bodies. Kwik Shop launches a broad constitutional attack against L.B. 781, encompassing no less than 11 provisions of the Nebraska Constitution and 4 provisions of the U.S. Constitution. Before the analysis of those constitutional issues can proceed, however, we must determine whether Kwik Shop has standing to mount such an attack.

### KWIK SHOP'S STANDING

To have standing to challenge the federal or state constitutionality of a statute, the contestant must be one who is, or is about to be, adversely affected by the language in question and must show that as a consequence of the alleged unconstitutionality, the contestant is deprived of a constitutionally protected right. *State v. Fellman*, 236 Neb. 850, 464 N.W.2d 181 (1991); *State v. Crowdell*, 234 Neb. 469, 451 N.W.2d 695 (1990); *State v. Monastero*, 228 Neb. 818, 424 N.W.2d 837 (1988). As Kwik Shop challenges a number of provisions within the Nebraska Liquor Control Act, this standard must be applied to each challenge individually.

Kwik Shop's constitutional challenges can be divided into two groups: those which challenge the standards used by local governing bodies in determining whether to grant licenses and those which challenge the local governing bodies' authority as to existing licenses and licensed premises. Kwik Shop's

challenges on the latter are premature and made without standing. As stated above, to have standing, a contestant must show that he or she is, or is about to be, adversely affected by the language in question. Kwik Shop's challenges are made as an applicant only; consequently, it lacks standing to challenge provisions which apply only to licensed premises. As such, we will not address these attacks to the statute.

As to Kwik Shop's challenges concerning the constitutionality of the standards used by local governing bodies in determining whether to grant licenses, standing is established. To have standing, as stated above, one must be adversely affected by the language in question and must show that as a consequence of the alleged unconstitutionality, the contestant is deprived of a constitutionally protected right. Kwik Shop has been adversely affected by the relevant provisions of the Nebraska Liquor Control Act by the Council's denial of its applications. Thus, Kwik Shop has standing to challenge only those provisions of the Nebraska Liquor Control Act which relate to license applicants.

## WHETHER § 53-134 IS VAGUE

Kwik Shop argues that § 53-134, as amended by L.B. 781, is impermissibly vague, in violation of the 5th and 14th amendments to the U.S. Constitution. Kwik Shop also contends that this vagueness creates an unconstitutional delegation of power from a legislative power to an administrative or executive authority, in violation of Neb. Const. art. II, § 1.

Before we address Kwik Shop's contentions, a discussion of this court's standard of review as to the constitutionality of statutes is helpful. It is axiomatic that statutes are afforded a presumption of constitutionality, and the unconstitutionality of a statute must be clearly established before it will be declared void. *State v. Kipf*, 234 Neb. 227, 450 N.W.2d 397 (1990). Even when a law is constitutionally suspect, a court will attempt to interpret it in a manner consistent with the Constitution. See *id*. See, also, *State ex rel. Wright v. Pepperl*, 221 Neb. 664, 380 N.W.2d 259 (1986). The burden of establishing the unconstitutionality of a statute is on the one attacking its

validity. *In re Guardianship and Conservatorship of Sim*, 225 Neb. 181, 403 N.W.2d 721 (1987).

When a legislative enactment is challenged on vagueness grounds, the issue is whether the two requirements of procedural due process are met: (1) adequate notice to citizens and (2) adequate standards to prevent arbitrary enforcement. *Kolender v. Lawson*, 461 U.S. 352, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983); *City of Lincoln v. ABC Books, Inc.*, 238 Neb. 378, 470 N.W.2d 760 (1991). See, also, *Grayned v. City of Rockford*, 408 U.S. 104, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972); *State v. Fellman*, 236 Neb. 850, 464 N.W.2d 181 (1991). "In other words, due process requires that an enactment supply (1) a 'person of ordinary intelligence a reasonable opportunity to know what is prohibited' and (2) 'explicit standards for those who apply [it].' " *ABC Books, Inc.*, 238 Neb. at 382, 470 N.W.2d at 764 (quoting *Grayned, supra*).

Kwik Shop contends that the 20 standards established by L.B. 781 (codified at § 53-134(2)(a) through (t)) are vague and arbitrary in that no standards are supplied to measure them against. Section 53-134, as amended by L.B. 781, provided that only the requirements of the Nebraska Liquor Control Act and the following criteria are to be considered:

(a) The adequacy of existing law enforcement . . . ;

(b) The recommendation of the police department . . . ;

(c) Existing motor vehicle and pedestrian traffic flow in the vicinity of the proposed licensed premises . . . ;

(d) Zoning restrictions . . . ;

(e) Sanitation or sanitary conditions on or about the proposed licensed premises;

(f) The existence of a citizen's protest and similar evidence . . . ;

(g) The existing population and projected growth within . . . the area to be served;

(h) The existing liquor licenses . . . ;

(i) Whether the proposed license would be compatible with the neighborhood . . . ;

(j) Whether the type of business or activity proposed to be operated . . . is and will be consistent with the public interest as declared in section 53-101.01;

(k) Whether the applicant can ensure that all alcoholic beverages . . . will be handled by persons in accordance with section 53-102;

(l) Whether the applicant has taken every reasonable precaution to protect against the possibility of shoplifting of alcoholic liquor . . . ;

(m) Whether the applicant is fit, willing, and able to properly provide the service in conformance with all provisions and requirements . . . pursuant to the act;

(n) Whether the applicant has demonstrated that the type of management and control exercised over the licensed premises will be sufficient to ensure that the licensee can conform to all the provisions and requirements . . . pursuant to the act;

(o) The background information of the applicant established by information contained in the public records of the commission and investigations conducted by law enforcement agencies;

(p) Past evidence of discrimination involving the applicant . . . ;

(q) Whether the applicant . . . suppressed any fact or provided any inaccurate information to the commission . . . ;

(r) Proximity of and impact on schools, hospitals, libraries, parks, and other public institutions;

(s) Whether activities proposed to be conducted on the licensed premises . . . will create unreasonable noise or disturbance; and

(t) Compliance with state laws, liquor rules and regulations, and municipal ordinances and regulations . . . .

Kwik Shop argues that these factors are "meaningless in the abstract" and that without any statutory standards, the local governing body can "arbitrarily decide whether a license should issue based on its own unstated, inconsistent and potentially unconstitutional standards." Brief for appellant at 20. The question therefore becomes whether the enactment promulgated by L.B. 781 provides the local governing bodies with adequate, sufficient, and definite standards within which

they are to exercise their discretion, while also providing potential applicants a reasonable opportunity to know what is required to obtain a license.

We find that it does not. The requirement that the local governing bodies consider the "adequacy of existing law enforcement," the "recommendation of the police department," "[z]oning restrictions," "[s]anitation . . . conditions," and the various other statutory criteria does not, by itself, provide sufficient guidance either to the governing body or to the applicant to meet the requirements of procedural due process.

Additionally, L.B. 781, § 12, amended § 53-134 to provide that, when performing their licensing functions, local governing bodies can consider an applicant's "(t) Compliance with . . . municipal ordinances and regulations . . . ." Subsection (t) in effect empowers local governing bodies to adopt by ordinance licensing regulations which must be met by applicants before a license will issue, without providing any standards to limit the contents of the regulations. Such a scheme does not provide sufficient guidance to meet the requirements of a constitutional delegation of legislative power.

Neither § 53-134 as a whole nor subsection (t) in particular provides adequate notice to persons of ordinary intelligence regarding the circumstances necessary to acquire a liquor license, nor do they provide adequate standards to governing bodies which rule on applications.

Accordingly, not only does the enactment fail on due process grounds, but because of its vagueness, it is also an unconstitutional delegation of power under Neb. Const. art. II, § 1. Article II, § 1, of the Nebraska Constitution provides:

> The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted.

In *Bosselman, Inc. v. State*, 230 Neb. 471, 476, 432 N.W.2d 226, 229 (1988), we addressed the issue of the delegation of such power and stated:

"It is fundamental that the Legislature may not delegate legislative power to an administrative or executive authority. Smithberger v. Banning, 129 Neb. 651, 262 N.W. 492, 100 A.L.R. 686. The Legislature does have power to authorize an administrative or executive department to make rules and regulations to carry out an expressed legislative purpose, or for the complete operation and enforcement of a law within designated limitations. Such authority is administrative in its nature and its use by administrative officers is essential to the complete exercise of the powers of all departments. State ex rel. Martin v. Howard, 96 Neb. 278, 147 N.W. 689. . . .

"The limitations of the power granted and the standards by which the granted powers are to be administered must, however, be clearly and definitely stated in the authorizing act."

(Quoting *Lincoln Dairy Co. v. Finigan*, 170 Neb. 777, 104 N.W.2d 227 (1960).) "Such standards may not rest on indefinite, obscure, or vague generalities, or upon extrinsic evidence not readily available." *Bosselman, Inc.*, 230 Neb. at 476, 432 N.W.2d at 229-30.

In applying the principles set forth in *Lincoln Dairy Co.*, this court has held that where the Legislature has provided " ' "reasonable limitations and standards for carrying out the delegated duties, there is no unconstitutional delegation of legislative authority." ' " *Bosselman, Inc.*, 230 Neb. at 476-77, 432 N.W.2d at 230. Accord, *Ewing v. Scotts Bluff Cty. Bd. of Equal.*, 227 Neb. 798, 420 N.W.2d 685 (1988); *In re Application U-2*, 226 Neb. 594, 413 N.W.2d 290 (1987). In *State ex rel. Douglas v. Nebraska Mortgage Finance Fund*, 204 Neb. 445, 465, 283 N.W.2d 12, 24 (1979), this court delineated the standards to be applied when examining a legislative delegation:

The question of how far the Legislature should go in filling in the details of the standards which an administrative agency is to apply raises large issues of policy in which the Legislature has a wide discretion, and the court should be reluctant to interfere with such discretion. Such standards in conferring discretionary

power upon an administrative agency must be reasonably adequate, sufficient, and definite for the guidance of the agency in the exercise of the power conferred upon it and must also be sufficient to enable those affected to know their rights and obligations. 1 Am. Jur. 2d, Administrative Law, § 117, p. 923. The modern tendency is to be more liberal in permitting grants of discretion to an administrative agency in order to facilitate the administration of laws as the complexity of economic and governmental conditions increases. 1 Am. Jur. 2d, Administrative Law, § 118, p. 925. This is particularly true where . . . the violation of any such regulation does not constitute a criminal act.

As stated above, § 53-134, as amended by L.B. 781, does not provide the local governing bodies with adequate, sufficient, and definite standards within which they are to exercise their discretion. The conclusion that L.B. 781 "delegates this State's legislative power to the local governing bodies in violation of Neb. Const. art. II, § 1, is inescapable." *Bosselman, Inc.*, 230 Neb. at 478, 432 N.W.2d at 231. Accordingly, without the unconstitutional delegation to the local governing bodies, no part of the enactment is workable. No part of the enactment is severable from the portion thereof which contains the unconstitutional delegation, and, as a consequence, the entire enactment must fail. See, *Bosselman, Inc., supra*; *Snyder v. IBP, inc.*, 229 Neb. 224, 426 N.W.2d 261 (1988); *State v. Monastero*, 228 Neb. 818, 424 N.W.2d 837 (1988). In determining that § 53-134 is unconstitutional, making the entire enactment invalid, it becomes unnecessary to consider Kwik Shop's other claims of constitutional infirmity. We turn, then, to our review of the Council's findings.

## STANDARD OF REVIEW

We have addressed similar issues in the recent cases of *B & R Stores v. Nebraska Liquor Control Comm.*, 242 Neb. 763, 497 N.W.2d 654 (1993), *Hy-Vee Food Stores v. Nebraska Liquor Control Comm.*, 242 Neb. 752, 497 N.W.2d 647 (1993), and *Gas 'N Shop v. Nebraska Liquor Control Comm.*, 241 Neb. 898, 492 N.W.2d 7 (1992), where we held that

decisions under the authority of the Commission are to be reviewed by appeal. In the case of appeal, the matter is reviewed de novo on the record. *Gas 'N Shop, supra*; *R.D.B., Inc. v. Nebraska Liquor Control Comm.*, 229 Neb. 178, 425 N.W.2d 884 (1988). However, the above cases addressed only applications which were filed between the time when § 53-1,116(5) (Reissue 1984) was in effect and the time 1989 Neb. Laws, L.B. 780, and L.B. 781 became effective. Section 53-1,116(5)(b) (Cum. Supp. 1986), which was enacted between that time, was determined to be unenforceable by *Bosselman, Inc. v. State*, 230 Neb. 471, 432 N.W.2d 226 (1988), which declared § 53-134 (Cum. Supp. 1986) to be an unconstitutional delegation of power and, accordingly, declared the entire enactment to be unenforceable. Legislation which attempted to cure the constitutional infirmities of the enactment was also declared invalid by *Gas 'N Shop*, so the previous statute on the subject was applied.

Such is also the case here. We have determined that § 53-134, as amended by L.B. 781, is unconstitutionally vague and unconstitutionally delegates legislative power. Without the delegation, no part of the enactment is workable, and, consequently, the entire enactment is unenforceable. "When an amendatory act is invalid, the previous statute on the subject remains in full force and effect." *Gas 'N Shop*, 241 Neb. at 900, 492 N.W.2d at 9. See, *State v. Anderson*, 188 Neb. 491, 197 N.W.2d 697 (1972); *State v. Greenburg*, 187 Neb. 149, 187 N.W.2d 751 (1971). Thus, the controlling language is found in § 53-1,116(5) (Reissue 1984): "Any decision of the commission . . . refusing to grant . . . a license . . . may be reversed, vacated, or modified by the district court of Lancaster County on appeal . . . ." Consequently, Kwik Shop invoked the jurisdiction of the proper district court.

The next step is to determine the scope of our review. As § 53-1,116 (Cum. Supp. 1990) is unenforceable, we turn to the previous statute on the subject—§ 53-1,116 (Reissue 1988). However, that version and the 1986 version have also been declared unenforceable by this court in *Bosselman, Inc.* As noted above, the controlling language is found in § 53-1,116(5) (Reissue 1984), which provides that decisions of the

commission are to be reviewed by appeal. In the case of appeal, the matter is reviewed de novo on the record. Accordingly, we review the Council's decision de novo on the record.

## THE COUNCIL'S FINDINGS

Having determined that it is the law as it existed prior to *Bosselman, Inc. v. State*, 230 Neb. 471, 432 N.W.2d 226 (1988), which controls, we next look at § 53-132 (Reissue 1984), which provided, in relevant part:

(2) A retail license . . . shall be issued to any qualified applicant if it is found by the commission that (a) the applicant is fit, willing, and able to properly provide the service proposed within the city . . . where the premises described in the application are located, (b) the applicant can conform to all provisions, requirements, rules, and regulations provided for in the Nebraska Liquor Control Act, (c) the applicant has demonstrated that the type of management and control exercised over the licensed premises will be sufficient to insure that the licensed business can conform to all provisions, requirements, rules, and regulations provided for in the Nebraska Liquor Control Act, and (d) the issuance of the license is or will be required by the present or future public convenience and necessity.

(3) In making its determination pursuant to subsection (2) of this section the commission shall consider:

(a) The recommendation of the local governing body;

(b) The existence of a citizens' protest made in accordance with section 53-133;

(c) The existing population of the city . . . and its projected growth;

(d) The nature of the neighborhood or community of the location of the proposed licensed premises;

(e) The existence or absence of other retail licenses . . . with similar privileges within the neighborhood or community of the location of the proposed licensed premises;

(f) The existing motor vehicle and pedestrian traffic flow in the vicinity of the proposed licensed premises;

(g) The adequacy of existing law enforcement;

(h) Zoning restrictions;

(i) The sanitation or sanitary conditions on or about the proposed licensed premises; and

(j) Whether the type of business or activity proposed to be operated in conjunction with the proposed license is and will be consistent with the public interest.

The record before us makes it abundantly clear that Kwik Shop, which has operated the 26 licensed premises it presently holds in a lawful manner, satisfies the conditions specified in § 53-132(2)(a), (b), and (c). We thus proceed to subsection (2)(d) of the statute and apply the evidence bearing on the factors listed in § 53-132(3). Our consideration of the factors will be set out below.

In its resolutions of denial to each of Kwik Shop's 10 applications, the Council made the following 6 identical findings in support of each of these denials:

1. . . . . [T]he existing law enforcement resources and services in the area were inadequate. . . .

2. The Lincoln Police Department issued a negative recommendation for this proposed license. . . .

3. . . . . [T]he existing population of the City of Lincoln and the projected population growth of the City of Lincoln and within the area proposed to be served were inadequate to support the proposed license. . . .

4. . . . . [T]he existing licenses, and the class of such licenses . . . all within [a] one mile radius from the proposed location were adequately serving the area. . . .

5. . . . . [T]he area in which the alcoholic liquor was proposed to be displayed and kept in and sold from was not reasonably secured. . . .

6. . . . . [T]he applicant had not demonstrated that the issuance of the license was consistent with promoting the health, safety and welfare of the people of the City of Lincoln, Nebraska.

As an additional finding in its denial of one of the Kwik Shop applications, the Council added a seventh finding that "the license would not be compatible with the neighborhood."

The Council's first finding (adequacy of law enforcement

resources and services) and second finding (negative recommendation of the police department) are based almost exclusively on a letter from Lincoln police chief Allan Curtis. The letter, identical in both hearings, states in relevant part:

> The pending applications of several grocery and convenience stores for the expansion of existing licenses or creation of new licenses within the City of Lincoln has focused attention on an issue the Lincoln Police Department considers extremely important. We would be opposed to the issuance or expansion of licenses in any manner.

Curtis, however, offered no evidence to support this concern or opposition. As we stated in *Gas 'N Shop v. Nebraska Liquor Control Comm.*, 241 Neb. 898, 903, 492 N.W.2d 7, 11 (1992): "[T]here is no evidence which establishes that illegal activity increases merely because a new license is issued."

The Council's third finding (population) in each of the cases is based on an affidavit of Kent Morgan, assistant planning director for the City of Lincoln, dated April 17, 1987. The affidavit sets forth Lincoln's 1960, 1970, and 1980 populations, as well as an estimate of the population as of January 1, 1987. The affidavit also states that "as a general rule, the City Planning Department projects the population of Lincoln to be growing at a rate of approximately one percent per year." The fact that Lincoln is growing consistently is not disputed by the parties. Moreover, evidence presented by Kwik Shop at the hearings indicates that there are fewer off-sale-only licenses in Lincoln today than in 1970, while the population has increased 28 percent since 1970. The Council's finding that the population is inadequate to support the proposed licenses runs contrary to the record.

The Council's fourth finding (existing licenses) is based upon the total number of all licenses of all classes that are within a 1-mile radius of each of Kwik Shop's proposed licensed premises. Such a comparison is misleading, however, because it includes on-sale as well as off-sale licenses. Kwik Shop presented evidence which broke down the number of licenses not only into off-sale and on-sale, but into class B (beer only) and class D (alcoholic liquor including beer) licenses. The

evidence presented by Kwik Shop indicates that its proposed licensed premises have as few as one and no more than five class B and/or class D licenses located within 1 mile. Without fact-based distinctions, the Council's blanket claim of adequate service around each location appears arbitrary and is not, in fact, supported by the record.

The Council's fifth finding (security) is not supported by any evidence whatsoever. Kwik Shop, on the other hand, presented substantial evidence at each of the hearings which clearly indicates that Kwik Shop would display, keep, and sell alcoholic liquor only from secured areas on its premises. Consequently, the Council's fifth finding is unsupported.

The Council's sixth finding (health, safety, and welfare) is a groundless assertion not supported by any evidence in the record.

Lastly, we find that the Council's seventh finding (neighborhood compatibility), included in the denial resolution of only one application, is also not supported by the record. The Council found that Kwik Shop's proposed license would not be compatible with the neighborhood in the area of the 4750 Calvert Street Kwik Shop location. Neither the City of Lincoln nor any other party appeared to present evidence concerning the compatibility of a licensed location in this particular neighborhood, however.

Nothing in the evidence indicates that the granting of the licenses would not be in the public interest. We turn, then, to the remaining factors in § 53-132(3).

We first note that while three people representing four of the appellees appeared at the hearings in opposition to Kwik Shop's applications, there is no evidence of a citizens' protest as such, as envisioned by § 53-132(3)(b). Additionally, of the appellees which appeared at the hearings, two—the Lincoln Package Beverage Association and Joe Quattrocchi, the owner of an established liquor store—clearly had a financial interest in having the licenses denied. The other two appellees at the hearings "indicated a general aversion to alcohol sales or to the sale of alcohol in [convenience] Stores." *Hy-Vee Food Stores v. Nebraska Liquor Control Comm.*, 242 Neb. 752, 756, 497 N.W.2d 647, 650 (1993).

Population, the neighborhoods of the proposed licensed premises, the existence of other licenses, and the adequacy of existing law enforcement—subsections (3)(c), (d), (e), and (g), respectively—have been addressed earlier. We now address the remaining criteria of § 53-132(3).

All the locations are heavily traveled, high-traffic areas; at least 7,100 and as many as 24,700 vehicles pass the various Kwik Shop locations daily. There is nothing in the record indicating that granting the licenses would increase traffic to an unmanageable level.

The record also does not indicate that zoning restrictions pose a problem. The evidence establishes that the stores are all located in areas zoned for business or commercial use, and a zoning change would not be necessary to permit the sale of beer at the subject premises.

Lastly, we note that the record contains nothing adverse to Kwik Shop's showing that its sanitation and sanitary conditions at each store are favorable.

Viewed as a whole, the evidence establishes that the requested licenses are in the public interest. Thus, we reach the question of whether the evidence before us indicates that the licenses are or will be "required by the present or future public convenience and necessity" as required by § 53-132(2)(d). We believe that they are.

As we stated in both *Hy-Vee Food Stores* and *Gas 'N Shop*, combining the concept of public convenience and necessity with the sale of alcohol appears oxymoronic. However, the Legislature has deemed it appropriate to allow private establishments to sell alcoholic liquor in this state. The record indicates that many individuals might feel less comfortable buying off-sale beer at a local tavern or a full-service liquor store than at a convenience store. Further, there is no close approximation between the purchase of off-sale beer at a convenience store and the purchase and consumption of beer in an "on premises" establishment. See *Hy-Vee Food Stores, supra*. "Accordingly, convenience stores may not be treated differently from other operations which combine the sale of liquor with the sale of other merchandise or services, for the differing treatment bears no reasonable relationship to the

State's policy of furthering temperance." *Gas 'N Shop*, 241 Neb. at 905, 492 N.W.2d at 12.

## CONCLUSION

The record does not indicate a legitimate reason for denying Kwik Shop the requested licenses. We therefore reverse, and remand to the district court with directions that the licenses be issued.

REVERSED AND REMANDED WITH DIRECTIONS.