REQUESTED BY: Senator Joel Johnson
Nebraska State Legislature
Your opinion request pertains to the Final Reading version of LB 395 (hereinafter "LB 395") which we understand incorporates that bill as amended by AM 585 and AM 852. You state that LB 395 adopts a statewide smoking ban, including a local "opt-out" to the state ban, a "grandfather" of existing nonsmoking ordinances in cities of the metropolitan class, and a "preemption" of other local smoking-related ordinances or resolutions. The "opt-out" provisions of LB 395 would permit the adoption of local ordinances and resolutions that are either less stringent or more stringent than the state ban, and such "opt-outs" could be accomplished in one of three ways: 1. the governing body of the local governmental subdivision in question could put the smoking issue directly on the ballot for the voters, 2. the voters themselves could put the smoking issue on the ballot, or 3. the governing body of the local governmental subdivision could adopt a smoking ordinance or resolution which would be subject to repeal by the voters of that subdivision. After setting out a description of the basic provisions of the bill, you pose seven questions to us regarding LB 395, the Legislature's authority and various constitutional issues. We will discuss each of your questions in turn.
Question No. 1. Is the Legislature permitted to authorize a county board, or the voters of the unincorporated area of any county, to place a resolution on the ballot for the voters of the unincorporated area of such county?
In Nebraska, the Legislature has plenary legislative authority except as limited by the state and federal constitutions. Pony Lake School District 30 v. State Committee for the Reorganization of School Districts, 271 Neb. 173, 710 N.W.2d 609 (2006); State ex rel. Stenberg v. Moore, 249 Neb. 589, 544 N.W.2d 344 (1996). The Nebraska Constitution is not a grant of power like the federal constitution, but instead, a limitation of power. State ex rel. Creighton University v. Smith,217 Neb. 682, 353 N.W.2d 267 (1984). As stated in Consumers Coal Co. v. City of Lincoln, 109 Neb. 51, 64, 65, 189 N.W. 643, 648 (1922):
We look . . . in the Constitution of the state to ascertain if any limitations have been imposed upon the complete powers with which the legislative department of the state is vested in its creation. . . . The lawmaking power of the state recognizes no restraints, and is bound by none, except such as are imposed by the Constitution.
As a result, the Legislature may legislate upon any subject not inhibited by the constitution; and restrictions upon this power will not be inferred unless the restriction is clearly implied. Pony Lake School District 30 v. State Committee for the Reorganization of School Districts, 271 Neb. 173, 710 N.W.2d 609 (2006); State ex rel. Creighton University v. Smith, 217 Neb. 682, 353 N.W.2d 267 (1984).
With respect to your first very general question concerning LB 395, we are aware of no provisions of either the state or the federal constitution which prohibit, specifically or by clear implication, the Legislature from authorizing a county board to place a resolution before the voters of the unincorporated areas of a county. Absent any such clear restrictions, we believe the Legislature's broad, plenary authority controls, and our response to your first question is "yes."
Question No. 2. If the answer to question #1 is yes, are the county initiative provisions of LB 395, as amended by AM 852, sufficient to adequately prescribe the initiative process to be utilized in counties under the bill, or are such provisions impermissibly vague and violative of substantive due process requirements?
We assume that your reference to the "county initiative provisions of LB 395" is a reference to subsection (2) of Section 17 of the Final Reading version of the bill. That subsection provides:
(2) A proposed ordinance or resolution may be placed on the ballot for the voters of the city, village, or unincorporated area of the county (a) by a majority vote of the governing body of such city, village, or county, (b) by initiative under sections 18-2501 to 18-2538, or (c) by petition meeting the requirements of and subject to sections 32-628 to32-630 and signed by at least five percent of the registered voters residing in the unincorporated area of such county on the day such petitions are filed for verification. The election shall be conducted as provided in sections 32-556 to 32-559.
The void for vagueness doctrine, which involves issues of substantive due process, is based on the due process requirements contained in theFifth and Fourteenth Amendments to the United States Constitution. U.S. v. Articles of Drug, 825 F.2d 1238 (8th Cir. 1987). Similar requirements are contained in art I, § 3 of the Nebraska Constitution. In order to pass constitutional muster with respect to vagueness, a statute must be sufficiently specific so that persons of ordinary intelligence do not have to guess at its meaning, and the statute must contain ascertainable standards by which it may be applied. Id. The void for vagueness doctrine applies to both criminal and civil statutes. Id. However, greater vagueness is tolerated in civil statutes than in criminal statutes. Id. In the context of civil statutes, the United States Supreme Court has indicated that a statute will not be deemed to be impermissibly vague unless it is so "vague and indefinite as to really be no rule or standard at all." Boutilier v. Immigration Service, 387 U.S. 118, 123 (1967). The Nebraska Supreme Court has also indicated that a civil statute which is otherwise valid will not be held void for vagueness unless it is so deficient in its terms as to render it impossible to enforce. Neeman v. Nebraska Natural Resources Comm'n,191 Neb. 672, 217 N.W.2d 166 (1974). In State ex rel. Douglas v. Herrington,206 Neb. 516, 294 N.W.2d 330 (1980), the court said that the established test for vagueness in a statute is whether it either forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application.
The county initiative provisions at issue in your second question provide that a proposed smoking resolution may be placed on the ballot by initiative under Neb. Rev. Stat. §§ 18-2501 to 18-2538 (1997, Cum. Supp. 2006). Those latter statutes apply generally to initiative and referendum efforts in municipal subdivisions in the state. The county initiative provisions also provide that a proposed smoking resolution may be placed on the ballot by a petition meeting the requirements of Neb. Rev. Stat. §§ 32-628 to 32-630 (2004). Those statutes deal with petitions under the Nebraska Election Act. Finally, the county initiative provisions at issue provide that elections dealing with smoking resolutions shall be conducted as provided in Neb. Rev. Stat. §§ 32-556 to 32 559 (2004, Cum. Supp. 2006), another portion of the Nebraska Election Act.
We have reviewed the various civil election statutes which create the standards at issue in subsection (2) of Section 17 of LB 395. Those statutes are detailed and specific, and are not, in our view, so vague that persons of common intelligence must necessarily guess at their meaning or differ as to their application. Consequently, we do not believe that the county initiative provisions in LB 395 are impermissibly vague so as to create substantive due process concerns.
Question No. 3. Is the Legislature permitted to authorize the voters of the unincorporated area of a county, by referendum, to repeal a resolution adopted by the governing board of such county?
Our answer to your Question No. 3 is guided by the legal principles discussed in our answer to your Question No. 1. That is, the Nebraska Legislature may legislate upon any subject not inhibited by the constitution; and restrictions upon this power will not be inferred unless the restriction is clearly implied. As was the case with your first question, we are not aware of any specific provisions of either the state or the federal constitution which prohibit the Legislature from authorizing the voters of the unincorporated area of a county to repeal a resolution adopted by the governing board of such county by referendum. Therefore, our answer to your third question is "yes."
Question No. 4. If the answer to question #3 is yes, are the county referendum provisions of LB 395, as amended by AM 852, sufficient to adequately prescribe the referendum process to be utilized in counties under the bill, or are such provisions impermissibly vague and violative of substantive due process requirements?
With respect to your Question No. 4, we assume that the "county referendum provisions of LB 395" referenced in that question are the provisions contained in subsection (3) of Section 17 of the Final Reading version of LB 395 which state:
(3) Any ordinance or resolution adopted by the governing body of any city, village, or county under subsection (1) of this section without being submitted to the voters under subsection (2) of this section shall take effect ninety days after its adoption unless, within such ninety-day period, such governing body receives a petition signed by at least five percent of the registered voters residing in such city, village, or unincorporated area of such county on the date the ordinance or resolution was adopted requesting that such ordinance or resolution be repealed. Upon verification of the signatures on such petition, the ordinance or resolution shall be repealed.
We also understand from your opinion request letter that you wish us to consider a change in subsection (3) of Section 17 in responding to your third question. You state:
A key legislative proponent of this third option [involving the repeal of a smoking ordinance by a referendum of the voters] intends that the issue of repeal go directly to the voters of the city, village or unincorporated area of the county, upon the filing of a petition for such repeal signed by at least five percent of the registered voters of such city, village or unincorporated area of such county, instead of providing that the ordinance or resolution be automatically repealed upon the filing of such petition, as the bill now provides. For purposes of this request, please assume that this intended change has been made.
Again, the legal principles regarding the void for vagueness doctrine and substantive due process are set out previously in our discussion of your Question No. 2. However, the "referendum" process established by subsection (3) of Section 17 of LB 395 is somewhat different than the "initiative" process established by subsection (2) of Section 17, in that there is no reference in the "referendum" process to existing procedures under Nebraska election law. Instead, subsection (3) simply provides that a smoking ordinance or resolution adopted by the governing body of a political subdivision shall take effect within ninety days after its adoption unless the governing body "receives a petition signed by at least five percent of the registered voters" residing in the subdivision "requesting that such ordinance or resolution be repealed." You apparently contemplate that such a petition will trigger a vote by the people of the governmental subdivision, but we do not have the particulars of that statutory language before us.
While the election language in subsection (3) of Section 17 of LB 395 is not as specific or as precise as the language in subsection (2) referencing particular election statutes, we do not believe that it is so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. And, as was the case with subsection (2), this language involves a civil rather than a criminal statute. As a result, we do not believe that the county referendum provisions in LB 395 are impermissibly vague. Nor do they create substantive due process concerns. Nonetheless, to the extent that there are procedural questions with respect to implementation of the referendum process created by subsection (3), you may wish to consider incorporating some of the specific election statutes included in subsection (2) to clarify the mechanics of the referendum process.
Question No. 5. Will a resolution passed by the governing body of a county to regulate smoking in the unincorporated area of such county have the same force of law as an ordinance or regulation and be enforceable as such?
We assume that this inquiry is based, at least to some extent, on Nebraska case law which indicates that a municipal resolution is generally not the equivalent of a municipal ordinance. Smith v. City of Papillion, 270 Neb. 607, 705 N.W.2d 584 (2005); Sommerfeld v. City of Seward, 221 Neb. 76, 375 N.W.2d 129 (1985). However, that legal rule appears to apply when both the ordinance and resolution are passed by a municipality. In contrast, the present case involves a situation where LB 395 would specifically allow cities and counties to adopt nonsmoking bans by "ordinance or resolution." As a result, we assume that cities would adopt such bans by ordinance, and counties by resolution, since our general review of the Nebraska statutes pertaining to actions by county boards indicates that in most instances, such boards are authorized to act by resolution rather than by ordinance. Under those circumstances, the question presented is whether a resolution adopted by a county board under LB 395 has the same force of law as an ordinance adopted by a city under LB 395. We believe that it does.
We have found no Nebraska cases which speak directly to the question presented. However, the law from other jurisdictions appears to be that a resolution or ordinance passed by a county board pursuant to its authority has the same force as a statute. Gale v. Board of Supervisors of Oakland County, 260 Mich. 399, 245 N.W. 363 (1932); 20 C.J.S. Counties § 151 (2007). In addition, unless the legislative body of a state specifies that a certain act must be done by ordinance or in some other specified manner, that act is just as valid when accomplished by a resolution as by an ordinance. Gale v. Board of Supervisors of Oakland County, 260 Mich. 399, 245 N.W. 363 (1932); 20 C.J.S. Counties § 145 (2007). In the present case, the provisions of LB 395 repeatedly specify that actions by cities, villages or counties under that bill may be accomplished by "ordinance or resolution." As a result, given the fact that LB 395 specifically authorizes county board action by resolution, we conclude that a resolution passed by the governing board of a county under that legislation would have the same force of law as an ordinance or a regulation, and be enforceable as such.
Question No. 6. Is it an unlawful delegation of legislative authority and a violation of the separation of powers provision of Article II, Section 1 of the Nebraska Constitution for the Legislature to permit the governing body of a city, village, or county, or the voters of a city, village, or the unincorporated area of a county to adopt an ordinance or resolution that is less stringent than state law?
Section 17 of LB 395 provides that:
On or after September 1, 2007, the governing body of any city, village, or county, or the voters of any city, village, or unincorporated area of any county as provided in subsection (2) of this section, may adopt a nonsmoking ordinance or resolution that is less stringent than or more stringent than the Nebraska Clean Indoor Air Act enacted by this legislative bill, except that such ordinance shall not be less stringent than sections 71-5707 to 71-5709 as such sections existed prior to September 1, 2007.
You are concerned that this provision constitutes an impermissible delegation of legislative authority in violation of art. II, § 1 of the Nebraska Constitution.
We are not entirely sure that the exercise of the police power contemplated by Section 17 of LB 395 even involves a delegation of legislative authority requiring an analysis under art. II, § 1 of the Nebraska Constitution. Nevertheless, assuming for purposes of this opinion that it does, it is fundamental that the Legislature may not delegate legislative power to an administrative or executive authority. Bosselman, Inc. v. State, 230 Neb. 471, 432 N.W.2d 226 (1988). That rule is based upon art. II, § 1 of the Nebraska Constitution dealing with separation of powers. Kwik Shop, Inc. v. City of Lincoln, 243 Neb. 178,498 N.W.2d 102 (1993). That rule also applies to legislative delegations to local governing bodies such as city councils and county boards. Bosselman, Inc. v. State, 230 Neb. 471, 432 N.W.2d 226 (1988). On the other hand, the Legislature does have the power to authorize an administrative or executive body to make rules and regulations to carry out an expressed legislative purpose or for the complete operation and enforcement of a law within designated limitations. Kwik Shop, Inc. v. City of Lincoln, 243 Neb. 178, 498 N.W.2d 102 (1993). The limitations of the power granted and the standards by which the granted powers are to be administered must be clearly and definitely stated in the authorizing act. Id. Such standards may not rest on indefinite, obscure or vague generalities, or upon extrinsic evidence not readily available. Id. The modern tendency is to be more liberal in permitting grants of discretion to an administrative agency so as to facilitate the administration of laws as the complexity of economic and governmental conditions increases. Id.
Section 17 of LB 395 authorizes local governmental bodies in Nebraska to adopt a nonsmoking ordinance or resolution that is less stringent than the Nebraska Clean Indoor Air Act enacted by LB 395. If that were the end of the statutory authorization, we might have some concerns regarding improper delegation of legislative authority. However, the bill also establishes limits as to how less stringent a particular ordinance or resolution may be, i.e., it provides that the ordinance or resolution cannot be less stringent than the Sections 71-5707 to 71-5709
as they existed prior to September 1, 2007. Those sections, in turn, contain detailed provisions regarding where individuals may smoke, how smoking areas may be designated and how persons in charge of public places should make efforts to prevent smoking and minimize the presence of environmental tobacco smoke. We believe that those sections provide clear standards which establish the limits for nonsmoking bans by local government, and by which the powers granted to local government under LB 395 can be administered. On that basis, we do not believe that the fact that LB 395 allows local governmental subdivisions to adopt nonsmoking bans less stringent than that set out in LB 395 constitutes an improper delegation of legislative authority.
Question No. 7. Do the "opt-out" provisions of LB 395, as amended by AM 852, preempt or infringe upon the ability of home rule charter cities to adopt smoking-related ordinances?
As noted at the beginning of this opinion, the provisions of LB 395 which you consider to be the "opt-out" provisions of that bill are those portions of the bill which allow local governmental subdivisions to adopt local ordinances or resolutions which are either less stringent than or more stringent than the statewide smoking ban created under LB 395. You ask if those "opt-out" provisions "preempt or infringe" upon the ability of home rule charter cities to adopt smoking-related ordinances.
It is well established in Nebraska that, under a home rule charter, exercise of a city's power must be consistent with and subject to the constitution and laws of this state, except as to local matters of strictly municipal concern. Home Builders Association of Lincoln v. City of Lincoln, 271 Neb. 353, 711 N.W.2d 871 (2006). The limitation that a home rule charter must be consistent with and subject to the laws of the state means that on matters of general concern to the people of the state, the charter must yield to state legislation. Id. Consequently,
. . . a provision of a home rule charter takes precedence over a conflicting state statute in instances of local municipal concern, but when the Legislature enacts a law effecting municipal affairs which is of state-wide concern, the state law takes precedence over any municipal action taken under the home rule charter.
Omaha Parking Authority v. City of Omaha, 163 Neb. 97, 104,77 N.W.2d 862,868 (1956). Based upon such cases from our supreme court, we have indicated previously that a determination as to whether a local or a state law takes precedence in any given situation requires a two-step process. Op. Att'y Gen. No. 97018 (March 10, 1997). First, it is necessary to determine if there is a conflict between the local law and the state statute at issue. Id. If there is, then it is necessary to determine if the subject matter of the two laws involves a matter of statewide or local concern. Id. That process is helpful in the present instance.
Section 17 of LB 395 specifically allows a city in Nebraska to adopt an ordinance which is "less stringent than or more stringent than" the statewide smoking ban otherwise established by LB 395, except that, as noted previously, that section also provides that any local ordinance or resolution regulating smoking may not be less stringent than Sections71-5705 to 71-5709 as they existed prior to September 1, 2007 (the current Nebraska Clean Indoor Air Act). As a result, it does not appear that a city ordinance pertaining to smoking adopted by a home rule charter city would conflict with LB 395 in any way unless it established standards below those created by the current Sections 71-5707 to71-5709. We believe that outcome is improbable. However, in the event that a proposed local smoking ordinance or resolution fell below the current Indoor Air Act standards, then we believe that LB 395 involves matters of statewide concern. As a result, the state statute would control over the local ordinance or resolution. In light of all those factors, we find it highly unlikely that the opt-out provisions of LB 395 would preempt or infringe upon the ability of home rule charter cities to adopt smoking related ordinances, given the considerable flexibility created by Section 17 of that bill.
SUMMARY
Based upon the lengthy discussion above, we believe that the Legislature may permit a resolution on smoking to be placed on the ballot by the county board or by the voters through initiative or referendum procedures. Moreover, the provisions of LB 395 pertaining to initiative and referendum procedures are not unconstitutionally vague in violation of substantive due process. It also appears to us that resolutions passed by a county board which regulate smoking under LB 395 have the same force and effect as ordinances or regulations. Finally, we conclude that LB 395 does not involve an unconstitutional delegation of legislative authority, and will likely not impinge upon or preempt any smoking regulations adopted by home rule charter cities.
Sincerely,
 JON BRUNNG Attorney General
 Dale A. Comer Assistant Attorney General
Approved by:
 _______________________________ Attorney General