GAS 'N SHOP, INC., A CORPORATION, APPELLEE AND CROSS-APPELLEE, V. NEBRASKA LIQUOR CONTROL COMMISSION, APPELLANT, AND CITY OF KEARNEY, APPELLEE AND CROSS-APPELLANT.

492 N.W.2d 7

Filed November 13, 1992.    No. S-90-158.

Don Stenberg, Attorney General, and Marie C. Pawol; Michael E. Kelley, Kearney City Attorney; and, on brief, Edwin C. Perry and Gregory H. Perry, of Perry, Guthery, Haase & Gessford, P.C., for appellant and for appellee City of Kearney.

Donald L. Dunn and Carl J. Sjulin, of Rembolt Ludtke Parker & Berger, for appellee Gas 'N Shop.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

In accordance with the appellee-cross-appellant City of Kearney's recommendation, the appellant Nebraska Liquor Control Commission denied the appellee and cross-appellee Gas 'N Shop, Inc.'s application for a license permitting it to sell beer at retail inside the city's corporate limits for consumption away from the premises at which it currently sells other items. (We note that although the commission and city designate themselves as appellants, the first notice of appeal was filed by the commission. Therefore, the city is not an appellant, but, rather, is an appellee and cross-appellant.) Upon appeal thereto by Gas 'N Shop, the district court reversed the commission's order of denial and directed it to issue the license. In their appeal and cross-appeal to this court, the commission and city assign errors which combine to assert that the district court (1) lacked jurisdiction and (2) erred in reversing the commission's ruling and ordering issuance of the license. We affirm.

In contesting the jurisdiction of the district court to have entertained this matter, the commission and city contend that Gas 'N Shop should have filed its appeal in the district court for Buffalo County, where Kearney is situated. In doing so, they rely on Neb. Rev. Stat. § 53-1,116(4)(b) (Reissue 1988), which provides, in pertinent part, that in instances in which a local governing body has recommended denial of a license, the recommendation shall be binding on the commission, but that the commission's order "may be reversed, vacated, remanded, or modified by the district court of a county in which the local governing body is located . . . . " While recognizing that *Bosselman, Inc. v. State*, 230 Neb. 471, 432 N.W.2d 226 (1988), declared unconstitutional the legislation which undertook to give local governing bodies the option to make recommendations binding upon the commission, the commission and city nonetheless urge that the above-quoted provision of § 53-1,116(4)(b) controls. They claim this is so because the Legislature changed the statutory scheme of which § 53-1,116(4)(b) is a part after it had enacted the laws involved in *Bosselman*.

However, not only do the changes not relate to venue in any way, they became effective on July 9, 1988 (1988 Neb. Laws,

L.B. 1089, and Neb. Const. art. III, § 27), several months before the *Bosselman* decision was filed on December 2, 1988. Thus, in no sense can the statutory changes on which the commission and city rely be said to have been an effort to cure the constitutional infirmities addressed in *Bosselman*. Indeed, the pertinent language of § 53-1,116(4)(b) (Reissue 1988), concerning the binding nature of the local governing body's recommendation, is identical to that of § 53-1,116(5)(b) (Cum. Supp. 1986), which *Bosselman* ruled to be unenforceable.

When an amendatory act is invalid, the previous statute on the subject remains in full force and effect. *State v. Anderson*, 188 Neb. 491, 197 N.W.2d 697 (1972); *State v. Greenburg*, 187 Neb. 149, 187 N.W.2d 751 (1971); *State ex rel. Baldwin v. Strain*, 152 Neb. 763, 42 N.W.2d 796 (1950). Thus, the controlling language is found in § 53-1,116(5) (Reissue 1984): "Any decision of the commission . . . refusing to grant . . . a license . . . may be reversed, vacated, or modified by the district court of Lancaster County on appeal . . . ." Consequently, Gas 'N Shop invoked the jurisdiction of the proper district court.

The next step is to determine the scope of our review. Current law provides that judicial review of decisions of the commission shall be by proceedings in error. § 53-1,116 (Cum. Supp. 1992). However, on March 17, 1989, when Gas 'N Shop initiated the steps required to invoke the jurisdiction of the district court, the law, as noted earlier, provided that decisions of the commission be reviewed by appeal. § 53-1,116(5) (Reissue 1984).

The scope of this court's review by proceedings in error varies significantly from that accorded appeals arising under § 53-1,116(5) (Reissue 1984). In proceedings in error, the review is limited to determining whether the commission acted within its jurisdiction and whether there is sufficient evidence as a matter of law to support its decision. E.g. *Trolson v. Board of Ed. of Sch. Dist. of Blair*, 229 Neb. 37, 424 N.W.2d 881 (1988). See, also, *Flood v. Keller*, 214 Neb. 797, 336 N.W.2d 549 (1983). In the case of appeal, the matter is reviewed de novo on the record. *R.D.B., Inc. v. Nebraska Liquor Control Comm.*, 229 Neb. 178, 425 N.W.2d 884 (1988). See, also, *Donahoo v. Nebraska Liquor Control Comm.*, 229 Neb. 197, 426 N.W.2d 250 (1988).

While as a general matter changes in procedural statutes apply to pending litigation, they have no retroactive effect upon steps taken in an action before such changes became effective. See *State v. Russell*, 194 Neb. 64, 230 N.W.2d 196 (1975). Here, Gas 'N Shop undertook an appeal in accordance with the then existing law. Thus, it follows that what is before us is an appeal, not a proceeding in error. Accordingly, we review the matter de novo on the record.

Having determined earlier that it is the law as it existed prior to *Bosselman* which controls, we next look at Neb. Rev. Stat. § 53-132 (Reissue 1984), which provided, in relevant part:

(2) A retail license . . . shall be issued to any qualified applicant if it is found by the commission that (a) the applicant is fit, willing, and able to properly provide the service proposed within the city . . . where the premises described in the application are located, (b) the applicant can conform to all provisions, requirements, rules, and regulations provided for in the Nebraska Liquor Control Act, (c) the applicant has demonstrated that the type of management and control exercised over the licensed premises will be sufficient to insure that the licensed business can conform to all provisions, requirements, rules, and regulations provided for in the Nebraska Liquor Control Act, and (d) the issuance of the license is or will be required by the present or future public convenience and necessity.

(3) In making its determination pursuant to subsection (2) of this section the commission shall consider:

(a) The recommendation of the local governing body;

(b) The existence of a citizens' protest made in accordance with section 53-133;

(c) The existing population of the city . . . and its projected growth;

(d) The nature of the neighborhood or community of the location of the proposed licensed premises;

(e) The existence or absence of other retail licenses . . . with similar privileges within the neighborhood or community of the location of the proposed licensed premises;

(f) The existing motor vehicle and pedestrian traffic flow in the vicinity of the proposed licensed premises;

(g) The adequacy of existing law enforcement;

(h) Zoning restrictions;

(i) The sanitation or sanitary conditions on or about the proposed licensed premises; and

(j) Whether the type of business or activity proposed to be operated in conjunction with the proposed license is and will be consistent with the public interest.

Neb. Rev. Stat. § 53-133 (Reissue 1984) required a hearing on the application if, among other things, the city recommended denial of the license or at least three persons residing within the city protested issuance of the license.

The record demonstrates beyond question that Gas 'N Shop, which has operated the 25 licensed premises it presently holds in a lawful manner, satisfies the conditions specified in § 53-132(2)(a), (b), and (c). Thus, we turn our attention to the evidence which bears on condition (2)(d) of § 53-132, the following summary of which has been organized in the order in which the factors to be considered are listed in § 53-132(3).

The record convinces us that the city's recommendation of denial was heavily influenced by its general aversion to licenses of the type in question and to permitting the sale of beer at premises such as the one in question, a facility popularly known as a convenience store, at which a variety of items, including foods and gasoline, are sold. The record also demonstrates that the city was swayed by its longstanding policy, codified into an ordinance, of recommending licensure only of those businesses devoted solely to the sale or dispensing of liquor or those for which the sale or dispensing of liquor constitutes a substantial integral, as distinguished from an incidental, part of the operation. Of the 46 outstanding licenses in the city, not one is of the type requested by Gas 'N Shop; 3 permit the sale of beer for consumption on the premises, 28 permit the sale in their original packages of all types of liquors for consumption either on or off the premises, 9 permit the sale in their original packages of liquors of all types for consumption off the licensed premises, 3 permit the sale of all types of liquors for consumption on the premises, and 3 permit the sale of beer and

wine only for consumption on the premises.

Although none of the three persons filing protests with the commission appeared at the hearing, one was the minister whose congregation plans to build a church some 230 feet from the Gas 'N Shop location. Another of the three was a minister who had presented the city with a document reflecting the opposition of 528 persons, including himself and the first minister mentioned, to the grant of the license. In addition, the Kearney board of education urged denial of the application, and the record reflects as well the opposition of one of those who already possess liquor licenses.

However, it is undisputed that the city's population is growing; the city claims its population to be 22,770, a 4.5 percent increase between 1980 and 1986. The population presently includes 14,117 persons 21 years of age or older, meaning that there exists one liquor license of some type per 306 adults. The area within a 1,200-foot radius of the premises in question is sparsely populated, being occupied by but 133 persons. There presently exists one licensee within the radius who is permitted to sell liquors of all types in their original packages for consumption off the licensed premises. Public senior and junior high school students attend classes at a site located across the street from the Gas 'N Shop location at a distance of approximately 263 feet. There are four liquor licenses between the Gas 'N Shop location and Kearney Catholic High School, which is situated seven blocks east of the high school.

The location is heavily traveled; 5,015 vehicles pass the Gas 'N Shop location daily. While the city asserts that the present turn lanes would be inadequate to accommodate increased traffic and that there may already be a need for a traffic signal, the record does not establish that granting the license would increase traffic.

Although the city's chief of police expressed concern as to whether there existed enough law enforcement personnel to deal with a new licensee, there is no evidence which establishes that illegal activity increases merely because a new license is

issued. Indeed, within 2 days of its recommendation of denial for the Gas 'N Shop application, the city recommended approval of a new license to sell beer only for consumption on the prospective licensee's premises.

There is no evidence that a zoning change would be required to permit the sale of liquor at the subject premises. However, the record does reveal that when Gas 'N Shop negotiated for the purchase of the property, it required a zoning change and represented to the seller that it would not seek a liquor license. Unknown to Gas 'N Shop, the seller reported that representation to the city. The *Bosselman* decision caused Gas 'N Shop to change its position with respect to seeking a liquor license.

The record reveals nothing derogatory about the "sanitation or sanitary conditions" of the premises.

The foregoing evidence does not persuade us that granting the license here sought would be other than in the public interest. The fact that there currently exists in the city no license of the type sought here is of no moment. See *Joe and Al's IGA, Inc. v. Nebraska Liquor Control Commission*, 203 Neb. 176, 277 N.W.2d 693 (1979) (fact no other grocery store within city limits had liquor license did not furnish basis for denying application). Neither is the testimony of the city's expert persuasive that an increase in liquor outlets results in an increase in alcohol consumption and that convenience store outlets tend to more dramatically increase consumption than some other types of outlets. The commission's own statistics demonstrate that while the number of liquor licenses in the state has increased, consumption of alcohol has decreased.

Thus, we finally reach the question of whether the record satisfies condition (2)(d) of § 53-132, that is, whether according to the evidence the issuance of the requested license is or will be required by the present or future public convenience and necessity. As suggested by another of the city's experts, combining the concept of public convenience and necessity with the sale of alcohol, a depressant drug, appears oxymoronic. The availability of alcohol, in his words, is "not absolutely necessary for many functions at all. To the extent that such a substance would be available in a community would probably

meet the necessity . . . ." However, whatever may be the rationality of the specification, the evidence upon which the commission relied does not overcome the other evidence establishing that the public convenience and necessity will be served by issuance of the license. The evidence is that some Gas 'N Shop customers have asked why they could not purchase beer at the location in question, some shoppers prefer to stop only once to purchase several different items, and there are those who prefer to purchase beer at locations other than at full-service liquor stores.

The fact that beer may be purchased elsewhere in the general area of the location in question is not, in and of itself, a lawful justification for refusing to grant a license, for even in the area of liquor control, a justification for classification must exist; purely arbitrary treatment cannot be sustained. See, *Gas 'N Shop v. Nebraska Liquor Control Comm.*, 229 Neb. 530, 427 N.W.2d 784 (1988); *Casey's Gen. Stores v. Nebraska Liq. Cont. Comm.*, 220 Neb. 242, 369 N.W.2d 85 (1985). Accordingly, convenience stores may not be treated differently from other operations which combine the sale of liquor with the sale of other merchandise or services, for the differing treatment bears no reasonable relationship to the State's policy of furthering temperance. See, *Gas 'N Shop v. Nebraska Liquor Control Comm., supra*; *Casey's Gen. Stores v. Nebraska Liq. Cont. Comm., supra*.

AFFIRMED.