HY-VEE FOOD STORES, INC., APPELLEE AND CROSS-APPELLEE, V.
NEBRASKA LIQUOR CONTROL COMMISSION, APPELLEE AND
CROSS-APPELLANT, AND CITY OF LINCOLN, APPELLANT.
497 N.W.2d 647

Filed March 12, 1993.    Nos. S-90-513, S-90-514, S-90-515, S-90-516.

William F. Austin, Lincoln City Attorney, and Joel D.
Pedersen for appellant.

John D. Hartigan, Jr., and Diane C. Sonderegger, of
Kennedy, Holland, DeLacy & Svoboda, and James D. Meyer,
of Meyer Law Firm, for appellee Hy-Vee Food Stores.

Robert M. Spire, Attorney General, and Donald E. Hyde for
appellee Liquor Control Commission.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN,
GRANT, and FAHRNBRUCH, JJ.

WHITE, J.
Based on the recommendation of appellant City of Lincoln
(Lincoln), appellee Hy-Vee Food Stores, Inc. (Hy-Vee) was

denied four liquor licenses by appellee-cross-appellant Nebraska Liquor Control Commission (commission). (Lincoln filed the first notice of appeal in the district court; the commission is therefore an appellee and cross-appellant. See Neb. Ct. R. of Prac. 1C and 1E (rev. 1992)). The district court reversed the commission, ordering it to issue the four licenses. Lincoln and the commission then appealed to this court. We affirm.

On January 24, 1989, Hy-Vee applied to the commission for four class "D" liquor licenses. A class D license permits the retailer to sell liquor and beer, in the original package, for off-premises consumption. Neb. Rev. Stat. § 53-124(5)(d) (Reissue 1984). On February 21 the Lincoln City Council held a hearing to consider the propriety of issuing the licenses.

At the Lincoln hearing a number of local citizens appeared objecting to issuance of the licenses. Moreover, the Lincoln police chief, in a letter to the city council, voiced concern about granting the licenses. Hy-Vee also presented evidence to the city council, including petitions signed by 657 citizens, which had been gathered over a two-day period and supported issuing the licenses.

The Lincoln City Council, acting in an advisory capacity to the Nebraska Liquor Control Commission, recommended denial of the licenses. In its recommendation, Lincoln listed seven reasons for denying the licenses.

In accordance with Lincoln's recommendation, the commission denied the licenses to Hy-Vee. The commission's order stated that although Hy-Vee complied with the first three parts of Neb. Rev. Stat. § 53-132(2) (Reissue 1984), which governs issuance of liquor licenses, Hy-Vee did not meet the requirements of subsection (2)(d) of that statute. Section 53-132(2)(d) addresses "the present or future public convenience and necessity" as requiring issuance of a license. *Id.* The commission's order concluded, "the general finding of the Commission that the issuance of this license is not required by the present or future public convenience and necessity [is] based upon the following specific findings of fact . . . (a) The local governing body's recommendation of denial."

On appeal, the Lancaster County District Court reversed the

commission. The court, after reviewing the proceedings before the city council and commission, held that Lincoln's recommendation had been arbitrary and unreasonable. The court further held that the commission's adoption of that recommendation was also unreasonable and an abuse of discretion. The court thus ordered the commission to issue the four licenses to Hy-Vee. This appeal followed.

Although both Lincoln and the commission filed briefs challenging the district court's ruling, only Lincoln's brief included assignments of error. Restated, Lincoln argues that the district court erred by (1) exceeding its lawful scope of review; (2) making findings contrary to the evidence and the law; (3) finding that Lincoln's denial was based on a policy against issuing licenses to certain outlets; and (4) reversing the commission's order and ordering that the licenses be issued. As our discussion will indicate, our standard of review obviates a review of the errors complained of in Lincoln's first three assignments. We therefore focus on the propriety of reversing the commission and ordering that the licenses be issued.

We recently addressed similar issues in *Gas 'N Shop v. Nebraska Liquor Control Comm.*, 241 Neb. 898, 492 N.W.2d 7 (1992). Our analysis is governed by that opinion.

As was the case in *Gas 'N Shop*, Hy-Vee filed its appeal to the district court during a "window" period in which license application and appeals were governed by liquor control law as it stood prior to the 1986 legislation held unconstitutional in *Bosselman, Inc. v. State*, 230 Neb. 471, 432 N.W.2d 226 (1988). For the reasons set forth in *Gas 'N Shop*, our standard of review is de novo on the record. See *id.* at 899-901, 492 N.W.2d at 9-10.

With this standard in mind, we first consider an evidentiary issue raised by the parties. In district court, Hy-Vee offered a transcription of a statement made by one of the commission members that explained his reason for voting against issuance of the licenses. The substance of the statement was not reflected in the commission's subsequent order, which denied the licenses. The district court sustained Lincoln's objections to the statement, holding that the statement was outside the record. Hy-Vee made an offer of proof and now asks us to consider the

statement as part of the record. Based on our standard of review, we do not.

Because our review is de novo on the record, we consider only the evidence considered by the commission. The statements made by the commissioner, reflecting the reasons behind his vote, were not part of the record considered by the commission. Neither do they constitute part of the record before us. See *Gas 'N Shop v. Nebraska Liquor Control Comm.*, 229 Neb. 530, 427 N.W.2d 784 (1988) (hereinafter *Gas 'N Shop I*).

We now turn to the record that was before the commission—which included the testimony and exhibits from the city council hearing. Applying pre-*Bosselman* law to the case at bar, we focus our inquiry on Neb. Rev. Stat. § 53-132 (Reissue 1984). The relevant portions of § 53-132, which list the qualifications for a license applicant, provide:

(2) A retail license . . . shall be issued to any qualified applicant if it is found by the commission that (a) the applicant is fit, willing, and able to properly provide the service proposed within the city . . . where the premises described in the application are located, (b) the applicant can conform to all provisions, requirements, rules, and regulations provided for in the Nebraska Liquor Control Act, (c) the applicant has demonstrated that the type of management and control exercised over the licensed premises will be sufficient to insure that the licensed business can conform to all provisions, requirements, rules, and regulations provided for in the Nebraska Liquor Control Act, and (d) the issuance of the license is or will be required by the present or future public convenience and necessity.

(3) In making its determination pursuant to subsection (2) of this section the commission shall consider:

(a) The recommendation of the local governing body;

(b) The existence of a citizens' protest made in accordance with section 53-133;

(c) The existing population of the city . . . and its projected growth;

(d) The nature of the neighborhood or community of

the location of the proposed licensed premises;

(e) The existence or absence of other retail licenses . . . with similar privileges within the neighborhood or community of the location of the proposed licensed premises;

(f) The existing motor vehicle and pedestrian traffic flow in the vicinity of the proposed licensed premises;

(g) The adequacy of existing law enforcement;

(h) Zoning restrictions;

(i) The sanitation or sanitary conditions on or about the proposed licensed premises; and

(j) Whether the type of business or activity proposed to be operated in conjunction with the proposed license is and will be consistent with the public interest.

*Id.* See, also, Neb. Rev. Stat. § 53-133 (Reissue 1984) (requiring a commission hearing on the application if, among other things, the city recommended denial of the license).

The record is abundantly clear that Hy-Vee has met the conditions in § 53-132(2)(a), (b) and (c). The parties have not argued otherwise. The evidence indicates that Hy-Vee has operated its Nebraska stores in a lawful manner and that none of the stores has been cited for a liquor-code or commission violation. We thus proceed to subsection (2)(d) of the statute and apply the evidence bearing on the factors listed in § 53-132(3). We consider the factors in the order listed in subsection (3), except that we will conclude with subsection (3)(a), that being the most involved application.

Beginning with subsection (3)(b), we note that only one written citizen protest was filed with the commission—by an attorney representing the Lincoln Package Beverage Association. The attorney also testified at the commission hearing. The Beverage Association clearly had an interest in denying the licenses; additional licenses would dilute existing retailers' market share. The Beverage Association attorney and six other individuals protested the issuance of licenses at the city council meeting. However, the majority of these protests indicated a general aversion to alcohol sales or to the sale of alcohol in grocery stores. Finally, the protests were more than counterbalanced by Hy-Vee's presentation of a petition signed

by 657 individuals who favored granting the licenses.

There is also undisputed evidence that Lincoln's population as of January 1, 1987, was 185,500, up from 171,932 in 1980. The evidence further indicates that Lincoln's population is growing at a rate of approximately 1 percent per year. Although the record does not clearly establish the nature of the neighborhoods or communities surrounding the stores, it does establish that the stores are in areas zoned for local business, planned neighborhood business, or commercial districts.

The attorney for the Package Beverage Association also presented evidence to the commission regarding the number of off-sale licenses located within one mile of each of the proposed locations. However, that information varied somewhat from similar information provided by Lincoln in its recommendations of denial. The evidence included in the city's recommendations also focused on the number of liquor licenses within one mile of each of the locations. Although Lincoln provided evidence of each type of license in the surrounding areas, subsection (3)(e) requires consideration of "retail licenses . . . with *similar privileges* within the neighborhood or community." Arguably, this would require a listing of only class D licenses. However, class C licenses—alcoholic liquors, on and off premises, in original packages—provide somewhat similar privileges. See Neb. Rev. Stat. § 53-124(5)(c) (Reissue 1984).

The evidence indicates that at the time Lincoln compiled its figures, the one-mile-radius circle around the store at 6919 "O" Street was served by three class D and ten class C licenses. The area around 2343 North 48th Street was served by four class D and three class C licenses. The area around the 1401 Superior Street store was served by one class D and one class C license. Finally, the area around the store at 3800 Old Cheney Road was served by three class C licenses.

Even though we list the number of class C licenses in the area near each store, we agree with Hy-Vee that many individuals might feel less comfortable buying off-sale liquor at a local tavern than at a grocery store. Furthermore, there is no close approximation between the purchase of off-sale liquor at a grocery store and the purchase and consumption of liquor in an "on premises" establishment.

The record contains no evidence regarding motor vehicle and pedestrian traffic, or sanitation and sanitary conditions around each store, subsections (3)(f) and (i) respectively. However, the record does indicate that zoning restrictions do not pose a problem. The evidence establishes that the stores are all located in areas zoned for business or commercial use.

Lincoln's police chief testified to the commission regarding the adequacy of existing law enforcement. The chief stated, "[i]f we saw *all the convenience stores and grocery stores* getting licenses, clearly, we would have to increase the people that work in our liquor and vice area. We would probably have to increase by a couple of officers." (Emphasis supplied). However, we are not involved in a review of licenses by all convenience and grocery stores. We only consider whether issuance of the four licenses to Hy-Vee would render existing law enforcement inadequate. The police chief's testimony does not shed light on that circumstance.

Further evidence regarding law enforcement was presented at the city council hearing. A letter from the police chief to the city council voiced concern that increased licenses would result in greater illegality and would be an "unnecessary burden for law enforcement." However, the police chief offered no corroborating evidence for this assertion and, as we stated in *Gas 'N Shop, supra,* "there is no evidence which establishes that illegal activity increases merely because a new license is issued." *Id.* at 903-04, 492 N.W.2d at 11.

The record indicates that the police department's only true "objection" was based on a Lincoln ordinance which required "separate and distinct liquor operations." As our discussion will indicate, however, this was an inappropriate basis for denial of the licenses. Despite these concerns, the police chief's letter continued, "[w]e are not concerned with the management, financial abilities, or moral fiber of the applicants. There is no question these are reputable people and businesses."

Nothing in the foregoing evidence indicates that the granting of the licenses would not be in the public interest. Thus, we finally address § 53-132(3)(a), the recommendation of the local governing body, as affecting the showing of public convenience

and necessity. In its recommendation of denial to the commission, Lincoln stated seven reasons for denying the licenses. Restated, the reasons given by Lincoln were: (1) the area around each location was adequately served by existing licenses; (2) the Lincoln Police Department's objections; (3) the applicant did not demonstrate a need for the licenses or a true increase in service to the public; (4) the applicant did not demonstrate an improvement to the neighborhood or a betterment to the community; (5) Lincoln's existing population and projected growth did not warrant the issuance of the licenses; (6) the present and future public convenience and necessity did not indicate a need for the licenses; and (7) the grocery stores did not comply with Lincoln's "separate and distinct business activity" ordinance. We address these factors in order.

With regard to adequate service by existing licenses, Lincoln's recommendation makes no distinction between types of licenses or between the locations of the stores. As we stated previously, an on-premises license is not the equivalent of a class D license, and serves different needs of purchasers of alcoholic beverages. Lincoln's recommendation lumps all types of licenses together. Likewise, the city makes no distinction between the different locations. The 69th and "O" location was served by ten class C and three class D licenses, while the area around the 1401 Superior Street store was served by one class D and one class C license. Yet Lincoln denied both licenses based on the same factors, without citing differences in population or neighborhood makeup. Without fact-based distinctions, the blanket claim of "adequate service" around each location appears arbitrary.

We have already addressed the police objections to the licenses. The police objections were either based on inappropriate grounds or factually unsupported.

With regard to demonstration of public service or community betterment, Lincoln's finding runs contrary to the record. The only evidence on the record relating to these amorphous "factors" balances in favor of Hy-Vee. Seven individuals protested the issuance of the licenses, while over 650 people indicated support for Hy-Vee. Likewise, the record

indicates that Hy-Vee (1) does community-service work in Lincoln; (2) provides efficient, economical, and courteous service to its customers; and (3) employs over 650 people in Lincoln, with an annual payroll of over $5 million.

Lincoln's past and projected population growth are also relied on in the city council's recommendation of denial. The record indicates an annual growth rate of 1 percent. The record further indicates, however, that although Lincoln had 51 more liquor licenses in 1989 than it had in 1980 (an average increase of 2.5 percent per year), only three class D licenses were added during that period. In fact, there were six less class D licenses in 1989 than there had been in 1970.

Lincoln's sixth reason for denial, that public convenience and necessity did not require the licenses, simply begs the question. A legal conclusion does not aid us in our determination of whether § 53-132(2)(d) was met.

The aforementioned six reasons given by Lincoln do not provide an adequate basis for denial of the licenses. The city's reasons either are neutral or actually support issuance of the licenses. The record indicates that the final reason given by Lincoln, the "separate and distinct" ordinance, provided the predominant reason for denial of the licenses. However, the city's reliance on the ordinance as a ground for denial of the licenses was inappropriate.

In *Gas 'N Shop I, supra,* we addressed the constitutionality of an earlier version of Lincoln's "separate and distinct" ordinance. That version made unlawful the retail sale of liquor "except within duly licensed premises which are separate and distinct from any other business activity; provided, this subsection shall not apply to the retail sale of alcoholic liquor as part of a bowling alley, hotel, motel, club, or restaurant business . . . ." *Id.* at 536, 427 N.W.2d at 788 (quoting Lincoln Mun. Code § 6.08.100 (1981)).

We declared the ordinance invalid, noting that the exemption of bowling alleys, hotels, etc., treated certain "dual business operators" differently, but without justification, and therefore violated the policy of Neb. Rev. Stat. § 53-101.01(2) (Reissue 1984). We thus held that the ordinance violated equal protection. *Gas 'N Shop I, supra,* at 541-42, 427 N.W.2d at 791.

The version of the "separate and distinct" ordinance considered by the city when denying the Hy-Vee applications was an amended version of the ordinance declared invalid in *Gas 'N Shop I*. The amended version stated, in pertinent part: "It shall be unlawful for any person . . . keeping or selling alcoholic liquor for consumption *off the premises* to keep, or sell the same except within duly licensed premises which are separate and distinct from any other business activity." Lincoln Mun. Code § 6.08.100 (1986) (emphasis supplied). Although the amendment eliminated the exempted class of businesses addressed in *Gas 'N Shop I*, the ordinance still violated equal protection because it continued, without justification, to treat dual business operators differently.

The new ordinance applies the "separate and distinct" rule only to dual business operators who sell liquor for off-premises consumption. We have held, however, that this distinction does not bear a rational relation to furthering temperance, as required by Neb. Rev. Stat. § 53-101.01(4) (Reissue 1984). *Casey's Gen. Stores v. Nebraska Liq. Cont. Comm.*, 220 Neb. 242, 369 N.W.2d 85 (1985). In *Casey's*, we addressed legislation which treated convenience stores differently from, among other things, restaurants. In declaring the legislation unconstitutional we stated:

> At either [a convenience store or a restaurant] a person may purchase food as well as alcohol . . . . The only distinction is that the alcoholic beverages purchased at the convenience store will be drunk off the premises. *This difference, however, presents no distinctive corollary to furthering temperance, as an individual may drink as much in a private restaurant as he may at home or elsewhere.*

*Id.* at 245-46, 369 N.W.2d at 88. See, also, *Gas 'N Shop I, supra*.

The Lincoln "separate and distinct" ordinance, even in its amended form, distinguished between dual business operators without valid justification. The city's reliance thereon to deny Hy-Vee's applications was inappropriate.

We finally turn to the question before us: according to the evidence, is the issuance of the requested licenses required by

the present or future public convenience and necessity? We determine that it is. As we stated in *Gas 'N Shop, supra*, combining the concept of public convenience and necessity with the sale of alcohol appears oxymoronic. However, the record indicates that many consumers support the issuance of licenses to Hy-Vee. No evidence before the commission, including the recommendation of Lincoln, indicated that the surrounding areas were adequately served by licensees possessing similar privileges. See Neb. Rev. Stat. § 53-132(3)(e). Furthermore, a city council's arbitrary recommendation of denial, based on a belief of sufficient licenses, does not, by itself, justify denial of an otherwise valid license. *McChesney v. City of No. Platte*, 216 Neb. 416, 343 N.W.2d 925 (1984), *overruled on other grounds, R.D.B., Inc. v. Nebraska Liquor Control Comm.*, 229 Neb. 178, 425 N.W.2d 884 (1988).

We reiterate our statement in *Gas 'N Shop* as applied to the sale of beer or liquor:

The fact that beer [or liquor] may be purchased elsewhere in the general area of the location in question is not, in and of itself, a lawful justification for refusing to grant a license, for even in the area of liquor control, a justification for classification must exist; purely arbitrary treatment cannot be sustained.

*Id.* at 905, 492 N.W.2d at 12.

The record supports granting Hy-Vee the requested licenses. We therefore affirm the district court's holding and its order that the licenses be issued.

AFFIRMED.