WHITEHEAD OIL CO., DOING BUSINESS AS U-STOP CONVENIENCE SHOP, APPELLANT, V. CITY OF LINCOLN ET AL., APPELLEES.

498 N.W.2d 793

Filed April 23, 1993.    Nos. S-91-116, S-91-117, S-91-118, S-92-048, S-92-049.

Donald L. Dunn and Penny J. Berger, of Rembolt Ludtke Parker & Berger, for appellant.

William F. Austin, Lincoln City Attorney, and Dana W. Roper for appellee City of Lincoln.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

LANPHIER, J.
The Lincoln City Council, acting in accordance with the recommendation of the appellees, the City of Lincoln, the Lincoln Package Beverage Association, and Mothers Against Drunk Driving, and pursuant to the Nebraska Liquor Control Act, denied the appellant Whitehead Oil Co.'s applications for liquor licenses for five convenience stores. The Lancaster County District Court affirmed the denials. We reverse the judgment of the district court and remand the cause with directions.

## BACKGROUND

Whitehead Oil Co., doing business as U-Stop Convenience Shop (U-Stop), filed with the Nebraska Liquor Control Commission (Commission) five applications for class B liquor licenses for five of its convenience stores. A class B license permits the retailer to sell beer only, in the original package, for consumption off the premises. Neb. Rev. Stat. § 53-124(5)(B) (Reissue 1988). On February 20, 1990, a hearing was held before the Lincoln City Council (Council) regarding the first three applications, and on October 15, 1990, a hearing was held on the other two applications.

Each of the hearings was conducted pursuant to the procedures set forth in Neb. Rev. Stat. § 53-134 (Cum. Supp. 1990) (as amended by 1989 Neb. Laws, L.B. 781). After U-Stop offered evidence addressing each of the 20 criteria to be considered by the licensing body as set forth in § 53-134, evidence relating to the applications was presented by the City of Lincoln. A representative of the Lincoln Package Beverage Association appeared in opposition to the applications at both hearings, and a representative of Mothers Against Drunk Driving appeared in opposition to the applications at the second

hearing.

At the conclusion of each of the hearings, and without discussion, a motion to deny was made with respect to each application. The motions passed, and resolutions denying each application were thereafter adopted.

On appeal, the district court affirmed the Council's denial of all five of U-Stop's applications, finding that pursuant to L.B. 781, there was some competent evidence supporting the Council's decisions. This appeal followed.

## ASSIGNMENTS OF ERROR

For the reasons set forth in *Kwik Shop v. City of Lincoln, ante* p. 178, 498 N.W.2d 102 (1993), we need not address the majority of U-Stop's assignments of error, which relate to the constitutionality of L.B. 781. The only remaining issue to be addressed, then, is whether the Council's denials were supported by the record.

## STANDARD OF REVIEW

The facts, evidence, and decisions of the Council are in relevant respects the same in this appeal as in *Kwik Shop*. Our analysis today is thus governed by that opinion. For the reasons articulated in *Kwik Shop*, this appeal is controlled by Neb. Rev. Stat. § 53-1,116(5) (Reissue 1984), and our scope of review is de novo on the record. See, also, *Gas 'N Shop v. Nebraska Liquor Control Comm.*, 241 Neb. 898, 492 N.W.2d 7 (1992).

## THE CITY COUNCIL'S FINDINGS

As the findings of the Council in the instant case are nearly the same as in *Kwik Shop*, we will follow the analysis set forth in *Kwik Shop*, noting any factual discrepancies between the cases. Having determined that it is the law as it existed prior to L.B. 781 which controls, we look to Neb. Rev. Stat. § 53-132 (Reissue 1984) for guidance in reviewing the Council's findings. Section 53-132 provides, in relevant part:

(2) A retail license . . . shall be issued . . . if . . . (a) the applicant is fit, willing, and able to properly provide the service proposed . . . , (b) the applicant can conform to all provisions, requirements, rules, and regulations provided for in the Nebraska Liquor Control Act, (c) the applicant

has demonstrated that . . . the licensed business can conform to all provisions, requirements, rules, and regulations provided for in the Nebraska Liquor Control Act, and (d) the issuance of the license is or will be required by the present or future public convenience and necessity.

(3) In making its determination pursuant to subsection (2) of this section the commission shall consider:

(a) The recommendation of the local governing body;

(b) The existence of a citizens' protest . . . ;

(c) The existing population of the city . . . and its projected growth;

(d) The nature of the neighborhood or community of the location of the proposed licensed premises;

(e) The existence or absence of other retail licenses . . . with similar privileges within the neighborhood or community of the location of the proposed licensed premises;

(f) The existing motor vehicle and pedestrian traffic flow in the vicinity of the proposed licensed premises;

(g) The adequacy of existing law enforcement;

(h) Zoning restrictions;

(i) The sanitation or sanitary conditions on or about the proposed licensed premises; and

(j) Whether the type of business or activity proposed . . . will be consistent with the public interest.

The training procedures, management, and other evidence presented by U-Stop make it clear that U-Stop has the ability to more than satisfy the conditions specified in § 53-132(2)(a), (b), and (c). We thus proceed to subsection (2)(d) of the statute and apply the evidence bearing on the factors listed in § 53-132(3). Our consideration of the factors will be set out below.

The Council made six identical findings in support of its resolutions of denial to each of U-Stop's applications: (1) The existing law enforcement resources in the area were inadequate; (2) the Lincoln Police Department issued a negative recommendation for the proposed licenses; (3) Lincoln's existing population and projected growth did not warrant the licenses; (4) the area around each location was adequately served by existing licenses; (5) the area in which the alcoholic

liquor was proposed to be kept was not reasonably secure; and (6) the applicant did not demonstrate that the issuance of the license would promote the health, safety, and welfare of the people of Lincoln.

The Council's first finding (adequacy of law enforcement resources) and second finding (negative recommendation of the police department) are based almost exclusively on a letter from Lincoln police chief Allan Curtis. The letter, identical in both hearings, states in relevant part:

> The pending applications of several local grocery and convenience stores for the expansion of existing licenses or creation of new licenses within the City of Lincoln has focused attention on an issue the Lincoln Police Department considers extremely important. We would be opposed to the issuance or expansion of licenses in any manner.

Curtis, however, offered no evidence to support this concern or opposition. As we stated in *Gas 'N Shop v. Nebraska Liquor Control Comm.*, 241 Neb. 898, 903, 492 N.W.2d 7, 11 (1992): "[T]here is no evidence which establishes that illegal activity increases merely because a new license is issued."

The Council's third finding (population) is based on an affidavit of Kent Morgan, assistant planning director for the City of Lincoln, dated April 17, 1987. The affidavit sets forth Lincoln's 1960, 1970, and 1980 populations, as well as an estimate of the population as of January 1, 1987. The affidavit also states that "as a general rule, the City Planning Department projects the population of Lincoln to be growing at a rate of approximately one percent per year." The fact that Lincoln is growing consistently is not disputed by the parties. Moreover, evidence presented by U-Stop at the hearings indicates that there are fewer off-sale-only licenses in Lincoln today than in 1970, while the population has increased 28 percent since 1970. The Council's finding that the population of Lincoln is inadequate to support the proposed licenses runs contrary to the record.

The Council's fourth finding (existing licenses) is based upon the total number of all licenses of all classes that are within a 1-mile radius of each of U-Stop's proposed licensed premises.

Such a comparison is misleading, however, because it includes on-sale as well as off-sale licenses. U-Stop presented evidence which broke down the number of licenses not only into off-sale and on-sale, but into class B (beer only) and class D (alcoholic liquor including beer) licenses. The evidence presented by U-Stop indicates that its proposed licensed premises have as few as one and no more than six class B and/or class D licenses located within 1 mile. Without fact-based distinctions, the Council's blanket claim of adequate service around each location appears arbitrary and is not, in fact, supported by the record. "The arbitrary recommendation of denial made by a city council, based only on the belief that there are sufficient licenses, does not now, if it ever did, . . . justify the denial of an otherwise valid application." *McChesney v. City of No. Platte*, 216 Neb. 416, 419, 343 N.W.2d 925, 927 (1984), *overruled on other grounds, R.D.B., Inc. v. Nebraska Liquor Control Comm.*, 229 Neb. 178, 425 N.W.2d 884 (1988). Accord *Hy-Vee Food Stores v. Nebraska Liquor Control Comm.*, 242 Neb. 752, 497 N.W.2d 647 (1993).

The Council's fifth finding (security) is not supported by any evidence whatsoever. U-Stop, on the other hand, presented substantial evidence at each of the hearings which clearly indicates that U-Stop would display, keep, and sell alcoholic liquor only from secured areas on its premises.

The Council's sixth finding (health, safety, and welfare) is a conclusory assertion without any apparent support.

Nothing in the foregoing indicates that the granting of the licenses would not be in the public interest. We turn, then, to the remaining factors of § 53-132(3).

We first note that while parties representing two organizations appeared at the hearings in opposition to U-Stop's applications, there is no evidence of a citizens' protest as such, as envisioned by § 53-132(3)(b). Additionally, of the parties which appeared at the hearings, the Lincoln Package Beverage Association clearly had a financial interest in having the licenses denied, while Mothers Against Drunk Driving "indicated a general aversion to alcohol sales or to the sale of alcohol in [convenience] stores." *Hy-Vee Food Stores*, 242 Neb. at 756, 497 N.W.2d at 650. In *Joe and Al's IGA, Inc. v.*

*Nebraska Liquor Control Commission,* 203 Neb. 176, 181, 277 N.W.2d 693, 696 (1979), we stated:

> [P]rotests to be effective must be of some substance. Here, stripped of form, they were all authored and signed by citizens involved in the liquor business, competitors if you will, who simply didn't want any competition. The claim that there were too many licenses . . . has a hollow ring
> . . . .

As the issues of population, the existence of other licenses, and the adequacy of existing law enforcement—subsections (3)(c), (e), and (g), respectively—have been addressed earlier, we turn to the remaining criteria of § 53-132(3).

All the locations are heavily traveled, high-traffic areas; at least 10,100 and as many as 21,500 vehicles pass the various U-Stop locations daily. Further, the Lincoln Traffic Engineering Division determined that there would be "[n]o significant peak hour changes expected" if the licenses were granted.

The record also does not indicate that zoning restrictions pose a problem. The evidence establishes that the stores are all located in areas zoned for business or commercial use, and a zoning change would not be necessary to permit the sale of beer at the subject premises.

Further, we note that the record contains nothing adverse to U-Stop's showing that its sanitation and sanitary conditions at each store are favorable.

When viewed as a whole, the evidence before us persuades this court that granting the requested licenses would be in the public interest. Thus, we reach the question of whether the evidence indicates that the licenses are or will be "required by the present or future public convenience and necessity" as provided by § 53-132(2)(d). We believe that they are.

As we stated in *Kwik Shop v. City of Lincoln, ante* 178, 498 N.W.2d 102 (1993); *Hy-Vee Food Stores, supra*; and *Gas 'N Shop, supra,* combining the concept of public convenience and necessity with the sale of alcohol appears oxymoronic. However, the Legislature has deemed it appropriate to allow private establishments to sell alcoholic liquor in this state. The record indicates that many individuals

might feel less comfortable buying off-sale beer at a local tavern or a full-service liquor store than at a convenience store. Further, there is no close approximation between the purchase of off-sale beer at a convenience store and the purchase and consumption of beer in an "on premises" establishment. See *Hy-Vee Food Stores, supra*. "Accordingly, convenience stores may not be treated differently from other operations which combine the sale of liquor with the sale of other merchandise or services, for the differing treatment bears no reasonable relationship to the State's policy of furthering temperance." *Gas 'N Shop*, 241 Neb. at 905, 492 N.W.2d at 12.

## CONCLUSION

The evidence before us does not support a legitimate reason for denying U-Stop its requested licenses. We therefore reverse, and remand to the district court with directions that the licenses be issued.

REVERSED AND REMANDED WITH DIRECTIONS.