FAYE MARTING AND WEST A LIQUOR, INC., A NEBRASKA CORPORATION, APPELLEES AND CROSS-APPELLANTS, AND CITY OF LINCOLN, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT AND CROSS-APPELLEE, V. NEBRASKA LIQUOR CONTROL COMMISSION ET AL., APPELLEES AND CROSS-APPELLEES.

548 N.W.2d 326

Filed May 31, 1996. No. S-94-695.

William F. Austin, Lincoln City Attorney, and Joel D. Pedersen for appellant.

William G. Blake, of Pierson, Fitchett, Hunzeker, Blake & Loftis, for appellees Marting and West A Liquor.

J. Michael Rierden for appellee J Mart.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

PER CURIAM.

The appellant and local governing body, City of Lincoln, and the appellees and cross-appellants and protestants, West A Liquor, Inc., and Faye Marting, seek review of the judgment of the district court affirming the grant of a liquor license by the appellee Nebraska Liquor Control Commission to the appellee and applicant, J Mart, Inc.

## FACTS

On September 23, 1993, J Mart, a convenience store located in the West A Shopping Center at Lincoln, Nebraska, filed an application for a license permitting it to sell beer, and only beer, for consumption off its premises (designated by the Nebraska Liquor Control Act as a class B license). See Neb. Rev. Stat. § 53-124 (Reissue 1993). The city council held public hearings on J Mart's application, at the conclusion of which the city council recommended that the commission deny the application, and passed a five-point resolution, declaring that

1. . . . the existing population of the City of Lincoln and the projected population growth of the City of Lincoln and within the area proposed to be served were inadequate to support the proposed license.

2. . . . the existing licenses, and the class of such licenses, including one Class "D", within a one-mile radius from the proposed location, were adequately serving the area.

3. . . . the license was not compatible with the nature of the neighborhood.

4. . . . the applicant had not demonstrated that the issuance of the license is and will be consistent with the public interest.

5. The issuance of the license will not be required by the present or future public convenience and necessity.

The commission then held a public hearing on November 10, 1993, at which J Mart presented evidence that its sole shareholder had extensive experience in the retail liquor industry and had never been cited for a license violation. As proof of the public need and convenience, J Mart presented a petition with 174 signatures in support of its application. In addition, J Mart represented that the license was necessary in order to allow it to compete with other convenience stores in the city.

Protestant Marting, the manager of West A Liquor, which is located approximately 50 feet from J Mart in the same shopping center, stated that traffic flow into the shopping center from the east is congested because of the location of J Mart's gas pump island. Marting also submitted a petition containing 177 signatures opposing J Mart's application and a letter she had written to the city council in which she declared that the shopping center was adequately served by her establishment and Keegan's Pub.

West A Liquor urged the commission to find, based upon the recommendation of the city council and citizen protests, that there was insufficient evidence of public need and convenience. It also disputed J Mart's testimony that this license was necessary to allow J Mart to compete in the convenience store

market, as the convenience stores closest to J Mart's location did not possess liquor licenses.

In rebuttal, J Mart submitted letters in support of the application from two other tenants in the shopping center. In addition, it offered an aerial photograph of the shopping center, showing a lack of congestion, and the testimony of an employee, who stated that there was sufficient clearance around J Mart's gas pump island to allow normal vehicle flow into the shopping center. J Mart concluded by introducing evidence that other shopping centers in Lincoln had multiple liquor licenses.

At the conclusion of the hearing, the commission's chairperson, although bemoaning what he characterized as the law stripping "the Commission of the authority to deny liquor licenses on a reasonable basis," nonetheless moved for the approval of J Mart's application. The motion passed unanimously; however, the commission did not enter its written order until December 7, 1993.

The district court affirmed the decision of the commission, concluding that the proceeding before it was controlled by Neb. Rev. Stat. § 53-1,116 (Reissue 1984), which provided, in relevant parts:

> (5) Any decision of the commission granting . . . a license . . . for the sale of alcoholic liquors, including beer, may be reversed, vacated, or modified by the district court of Lancaster County on appeal by any party to the hearing or rehearing before the commission. . . .
>
> . . . .
>
> (8) The appeal, provided for or referred to in [subsection] (5) . . . shall be heard and tried by the court without a jury on the record of the commission.

The district court reasoned therefrom that its review was limited to one on the record made before the commission to determine whether the commission's decision was arbitrary and unreasonable. The district court also concluded that the factors to be considered by the commission in determining whether the license should issue were as set forth in Neb. Rev. Stat. § 53-132 (Reissue 1984):

(2) A retail license . . . shall be issued to any qualified applicant if it is found by the commission that (a) the applicant is fit, willing, and able to properly provide the service proposed . . . (b) the applicant can conform to all provisions, requirements, rules, and regulations provided for in the Nebraska Liquor Control Act, (c) the applicant has demonstrated that ˙ . . . the licensed premises will be sufficient to insure that the licensed business can conform to all provisions, requirements, rules, and regulations provided for in the Nebraska Liquor Control Act, and (d) the issuance of the license is or will be required by the present or future public convenience and necessity.

(3) In making its determination pursuant to subsection (2) of this section the commission shall consider:

(a) The recommendation of the local governing body;

(b) The existence of a citizens' protest . . . ;

(c) The existing population of the city, village, or county, as the case may be, and its projected growth;

(d) The nature of the neighborhood or community of the location of the proposed licensed premises;

(e) The existence or absence of other retail licenses or bottle club licenses with similar privileges within the neighborhood or community of the location of the proposed licensed premises;

(f) The existing motor vehicle and pedestrian traffic flow in the vicinity of the proposed licensed premises;

(g) The adequacy of existing law enforcement;

(h) Zoning restrictions;

(i) The sanitation or sanitary conditions on or about the proposed licensed premises; and

(j) Whether the type of business or activity proposed . . . is and will be consistent with the public interest.

From the record before the commission, the district court found that because J Mart's sole shareholder had operated other licensed facilities for more than 10 years without a violation, the conditions in § 53-132(2)(a) through (c) were satisfied. The district court discounted the city council's recom-

mendation of denial, finding it to be conclusory, not supported by the record, and inconsistent with the law.

## ASSIGNMENTS OF ERROR

The city and protestants assign eight errors to the district court, which combine to assert that the district court erred in applying a wrong standard of review; failing to find that the commission erred in granting the license not only because the commission did not properly consider the appropriate criteria, but because J Mart did not demonstrate a present or future need; and failing to find that the commission issued the license before entering its order.

## STANDARD OF REVIEW

While there is disagreement among the parties as to the appropriate standard of review, all of the parties maintain that it is gleaned from § 53-1,116 (Reissue 1984). In *Kwik Shop v. City of Lincoln*, 243 Neb. 178, 498 N.W.2d 102 (1993), we ruled that Neb. Rev. Stat. § 53-134 (Cum. Supp. 1990), as amended by 1989 Neb. Laws, L.B. 781, was unconstitutional on a variety of grounds, including the vagueness of the criteria a local governing body was to consider in recommending to the commission whether to approve or deny a liquor license. Finding the other provisions of L.B. 781 inseparable, we held that the entire enactment must fail. In addressing our standard of review in that circumstance, we wrote:

> We have addressed similar issues in the recent cases of *B & R Stores v. Nebraska Liquor Control Comm.*, 242 Neb. 763, 497 N.W.2d 654 (1993), *Hy-Vee Food Stores v. Nebraska Liquor Control Comm.*, 242 Neb. 752, 497 N.W.2d 647 (1993), and *Gas 'N Shop v. Nebraska Liquor Control Comm.*, 241 Neb. 898, 492 N.W.2d 7 (1992), where we held that decisions under the authority of the Commission are to be reviewed by appeal. In the case of appeal, the matter is reviewed de novo on the record. *Gas 'N Shop, supra*; *R.D.B., Inc. v. Nebraska Liquor Control Comm.*, 229 Neb. 178, 425 N.W.2d 884 (1988). However, the above cases addressed only applications which were filed between the time when § 53-1,116(5) (Reissue 1984) was in effect and the time

1989 Neb. Laws, L.B. 780, and L.B. 781 became effective. Section 53-1,116(5)(b) (Cum. Supp. 1986), which was enacted between that time, was determined to be unenforceable by *Bosselman, Inc. v. State*, 230 Neb. 471, 432 N.W.2d 226 (1988), which declared § 53-134 (Cum. Supp. 1986) to be an unconstitutional delegation of power and, accordingly, declared the entire enactment to be unenforceable. Legislation which attempted to cure the constitutional infirmities of the enactment was also declared invalid by *Gas 'N Shop*, so the previous statute on the subject was applied.

Such is also the case here. We have determined that § 53-134, as amended by L.B. 781, is unconstitutionally vague and unconstitutionally delegates legislative power. Without the delegation, no part of the enactment is workable, and, consequently, the entire enactment is unenforceable. "When an amendatory act is invalid, the previous statute on the subject remains in full force and effect." *Gas 'N Shop*, 241 Neb. at 900, 492 N.W.2d at 9. See, *State v. Anderson*, 188 Neb. 491, 197 N.W.2d 697 (1972); *State v. Greenburg*, 187 Neb. 149, 187 N.W.2d 751 (1971). Thus, the controlling language is found in § 53-1,116(5) (Reissue 1984): "Any decision of the commission . . . refusing to grant . . . a license . . . may be reversed, vacated, or modified by the district court of Lancaster County on appeal . . . . ." Consequently, Kwik Shop invoked the jurisdiction of the proper district court.

The next step is to determine the scope of our review. As § 53-1,116 (Cum. Supp. 1990) is unenforceable, we turn to the previous statute on the subject—§ 53-1,116 (Reissue 1988). However, that version and the 1986 version have also been declared unenforceable by this court in *Bosselman, Inc.* As noted above, the controlling language is found in § 53-1,116(5) (Reissue 1984), which provides that decisions of the commission are to be reviewed by appeal. In the case of appeal, the matter is reviewed de novo on the record. Accordingly, we review the Council's decision de novo on the record.

*Kwik Shop*, 243 Neb. at 187-89, 498 N.W.2d at 109. We did not in *Kwik Shop* address the standard of review of the district court. That question was determined in the prior case of *R.D.B., Inc. v. Nebraska Liquor Control Comm.*, 229 Neb. 178, 425 N.W.2d 884 (1988), wherein we held that for appeals arising under § 53-1,116(5) (Reissue 1984), the district court may not disturb the decision of the commission unless the decision was arbitrary and unreasonable.

However, § 53-1,116(5) was subsequently amended by 1993 Neb. Laws, L.B. 183. Because the Legislature declared an emergency to exist, the amendment became effective the day the Governor approved the bill, February 15, 1993, a period of more than 7 months before J Mart filed the subject application. See, *Read v. City of Scottsbluff*, 179 Neb. 410, 138 N.W.2d 471 (1965); Neb. Const. art. III, § 27.

Although L.B. 183 contains provisions substantially similar to those previously held to be unconstitutional in L.B. 781, see *Kwik Shop, supra*, the constitutionality of the 1993 legislation has not been raised at any point in these proceedings by any party.

This court confronted a like situation in *Gas 'N Shop v. Nebraska Liquor Control Comm.*, 241 Neb. 898, 492 N.W.2d 7 (1992). One of the issues therein was where venue lay. Section 53-1,116(5) (Reissue 1984) provided for review in the district court for Lancaster County. However, a 1986 amending act, L.B. 911, provided for review in the district court in which the local governing body was located. We had held in *Bosselman, Inc. v. State*, 230 Neb. 471, 432 N.W.2d 226 (1988), that L.B. 911 was unconstitutional because a portion of it made local governing body decisions binding upon the commission. We accordingly ruled that all of L.B. 911 was invalid, and, therefore, the law reverted to the prior enactment, making § 53-1,116(5) (Reissue 1984) the relevant venue statute.

The local governing board in *Gas 'N Shop* argued that 1988 Neb. Laws, L.B. 1089, an amendatory act enacted after the adoption of L.B. 911, placed venue in the district court where the local governing board was located, and, thus, notwithstanding *Bosselman, Inc.*, L.B. 1089 should control venue. We, however, reasoned that as L.B. 1089 had been enacted

prior to the *Bosselman, Inc.* decision, it could not cure the constitutional infirmity found in *Bosselman, Inc.* Moreover, L.B. 1089 contained the same unconstitutional provision found in *Bosselman, Inc.* We thus found L.B. 1089 to be invalid and held the controlling statute to be § 53-1,116 (Reissue 1984).

*Kwik Shop v. City of Lincoln*, 243 Neb. 178, 498 N.W.2d 102 (1993), was decided on April 9, 1993, almost 2 months after L.B. 183 became effective. Following the *Gas 'N Shop* reasoning, "in no sense can the statutory changes . . . be said to have been an effort to cure the constitutional infirmities addressed" therein. *Gas 'N Shop*, 241 Neb. at 900, 492 N.W.2d at 9. As the pertinent language of § 53-1,116 (Reissue 1993), as amended by L.B. 183, is substantially similar to that found to be unenforceable in *Kwik Shop*, and the statutory change was not made in response to this court's opinion in *Kwik Shop*, it follows that § 53-1,116 (Reissue 1993) is also unenforceable.

When an amendatory act is invalid, the previous statute on the subject remains in full force and effect. *Kwik Shop, supra*; *Gas 'N Shop, supra*. Therefore, the previous statute, § 53-1,116 (Reissue 1984), is the relevant statute, and the scope of review announced in *R.D.B., Inc. v. Nebraska Liquor Control Comm.*, 229 Neb. 178, 425 N.W.2d 884 (1988), governs this case; that is, the commission's decision may not be disturbed unless it is arbitrary and unreasonable. Therefore, the district court did not apply an erroneous standard of review.

## CRITERIA AND BURDEN OF PROOF

It is next asserted by West A Liquor that the district court erred in affirming the commission's decision because the commission did not properly consider the appropriate criteria and because J Mart did not carry its burden to prove that the requested license is required by the present or future public need.

The city and protestants first urge that the commission chairperson's statement demonstrates that the commission abdicated its responsibility and did not consider the required statutory criteria.

However, we have previously noted that as statements made reflecting the reasons behind a commissioner's vote were not part of the record considered by the commission, they did not constitute part of the record before us. *Hy-Vee Food Stores v. Nebraska Liquor Control Comm.*, 242 Neb. 752, 497 N.W.2d 647 (1993). Thus, in order for West A Liquor's argument to have merit, it is the record as a whole which must show that the commissioners as a group failed to consider the statutory criteria for issuance of a license. We therefore move on to determine whether the record so establishes.

Notwithstanding that § 53-132 was amended by L.B. 183, for the reasons discussed earlier, the 1984 version controls this assignment of error. In that regard, we have previously held that where an applicant has a history of operating licensed premises in a lawful manner, the conditions specified in § 53-132(2)(a) through (c) (Reissue 1984) are satisfied. *American Drug Stores v. City of Lincoln*, 243 Neb. 548, 501 N.W.2d 278 (1993); *Kwik Shop, supra*; *Hy-Vee Food Stores, supra*. In this case, the record indicates that J Mart has operated licensed retail alcohol premises without a violation since 1983. Therefore, § 53-132(2)(a) through (c) (Reissue 1984) is satisfied.

The remaining element is proof that issuance of the license is or will be required by the present or future public convenience and necessity. An applicant for a liquor license has the burden of showing this element. *American Drug Stores, supra*.

With the exception of § 53-132(3)(a) (Reissue 1984), every consideration listed militates in J Mart's favor. Although there were protests against issuance of J Mart's license, most were forwarded by those with a business interest adverse to J Mart's. Moreover, there were as many letters and petition signatories in favor of the application as there were against it. There is nothing in the record which would indicate that issuance of the license would be adverse to current zoning restrictions or sanitation of the premises. The projected growth of the city does not weigh against issuance of the license, nor is the nature of the neighborhood contrary to issuance. In addition, the type of business to be operated in conjunction with the license is consistent with the public interest.

We do not overlook that included in the record is a letter in opposition to the issuance of all new liquor licenses, signed by the former chief of police of Lincoln. But we have previously found such evidence to be of no probative value with respect to the issue of whether issuance of a specific license is in the public interest. See, *Whitehead Oil Co. v. City of Lincoln*, 243 Neb. 312, 498 N.W.2d 793 (1993); *Hy-Vee Food Stores, supra*. We have similarly rejected evidence of blanket claims of adequate service by existing licensees similar to those forwarded by the city and protestants in this case as not being probative. See, *Whitehead Oil Co., supra*; *B & R Stores v. Nebraska Liquor Control Comm.*, 242 Neb. 763, 497 N.W.2d 654 (1993); *Hy-Vee Food Stores, supra*.

The city and protestants did offer testimony claiming that the existing motor vehicle traffic in the area around J Mart's gas pump island was congested. However, J Mart rebutted this evidence with an aerial photograph showing that traffic in that area was not congested.

The only consideration which weighs against J Mart's application is that the local governing body recommended denial of the application. However, the reasons given for the recommendation are essentially similar to those we have previously rejected. Arbitrary and conclusory claims that the existing and future population of Lincoln is inadequate to support issuance is of no value to our inquiry. See *B & R Stores, supra*. Although the city as the local governing body claimed that issuance of a license to J Mart is incompatible with the nature of the neighborhood, two other liquor licenses have previously been issued to premises in the same mall. Finally, the "conclusory statement that 'public convenience and necessity would not indicate that this license should be issued' is as little help to our inquiry" as it was in other cases. *B & R Stores*, 242 Neb. at 767, 497 N.W.2d at 657.

Therefore, not only does the record not show that the commissioners as a group failed to properly consider the appropriate criteria, the record on de novo review convinces us that J Mart sustained its burden of proof. Consequently, this assignment of error fails.

## PREORDER ISSUANCE

The last assignment of error rests on the complaint of West A Liquor that the license was issued unlawfully, in that it was issued before entry of the commission's written order of December 7, 1993.

The record does not contain the license, nor for that matter is there any evidence of when or if a license was issued to J Mart. It is true that the amended petition on appeal to the district court alleges that a license was issued to J Mart on November 18, 1993, and the commission's answer admits that allegation. But the record contains neither an admission nor a denial of this allegation by J Mart. J Mart cannot be held to the admission of the commission, for matters contained in pleadings are judicial admissions only insofar as the adversary is concerned. See, *Cook v. Beermann*, 202 Neb. 447, 276 N.W.2d 84 (1979); *Deck v. Sherlock*, 162 Neb. 86, 75 N.W.2d 99 (1956) (where evidence is admitted as admission against interest against one defendant, that evidence is not ordinarily admissible against codefendant). See, also, *ITT Continental Baking Co. v. Ellison*, 370 A.2d 1353 (D.C. App. 1977); *Kluger v. Gallett*, 288 Minn. 11, 178 N.W.2d 900 (1970); *Feldmiller v. Olson*, 75 Wash. 2d 322, 450 P.2d 816 (1969); *Morrissey v. City of New York*, 634 N.Y.S.2d 185 (N.Y. App. Div. 1995); *McAtee v Guthrie*, 182 Mich. App. 215, 451 N.W.2d 551 (1989); *Bell v. United Parcel Services*, 724 S.W.2d 682 (Mo. App. 1987); *Barclays American v. Haywood*, 65 N.C. App. 387, 308 S.E.2d 921 (1983); *Indiana State Highway Com'n v. Vanderbur*, 432 N.E.2d 418 (Ind. App. 1982); *Freestone County Title & Abstract v. Johnson*, 594 S.W.2d 817 (Tex. Civ. App. 1980); *National American Bank of New Orleans v. Davis*, 239 So. 2d 493 (La. App. 1970).

In short, the record fails to sustain this assignment of error.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED.